COMMONWEALTH vs. MICHAEL J. GOVE.

Suffolk.    September 16, 1974. — November 13, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Practice, Criminal,* Speedy trial.  *Statute,* Construction.  *Constitutional Law,* Speedy trial.  *Words,* "Pending."

Where, in violation of G. L. c. 277, § 72A, more than six months expired
    between the defendant's application "for prompt trial or other
    disposition" of a rape charge and his arraignment on that charge,
    convictions upon grand jury indictments for other crimes arising from
    the same incident as the rape charge did not violate § 72A. [354-356]
The right of a defendant charged with rape and two other crimes arising
    from the same incident to a speedy trial on the other charges
    commenced with the grand jury indictment on those charges and not
    with the prior complaint charging him with rape where neither of the
    later charges constituted a lesser included offense or a greater
    inclusive offense. [359]
Where a delay of more than six months between indictment and trial on
    relatively uncomplicated charges, caused partly by a motion by the
    defendant and not by any deliberate attempt by the Commonwealth
    to postpone trial, did not prejudice the defendant's case, the defend-
    ant was not deprived of his right to a speedy trial as guaranteed by the
    Sixth Amendment to the Federal Constitution and art. II of the
    Declaration of Rights of the Massachusetts Constitution. [362-365]

THREE INDICTMENTS found and returned in the Superior
Court on September 16, 1971.

Motions to dismiss the indictments were heard by
*Roy,* J., and the cases were tried before *Connolly,* J.

*Francis John Stolarz* for the defendant.

*Roger A. Emanuelson,* Assistant District Attorney, for
the Commonwealth.

TAURO, C.J.    The defendant appeals under G. L. c. 278,
§§ 33A-33G, following convictions on indictments for rape,
assault and battery by means of a dangerous weapon, and
armed robbery (later reduced to larceny). The Appeals
Court in dismissing the rape indictment held that the

defendant was not afforded a trial or other disposition of the rape charge within six months of his application for a speedy trial required by G. L. c. 277, § 72A (as appearing in St. 1965, c. 343), but refused to reverse the two remaining convictions. *Commonwealth* v. *Gove,* 1 Mass. App. Ct. 614 (1973). The case is here for further review on application of the defendant.[1]

The defendant contends (1) that all of the indictments flow from the same incident and therefore must meet the same six months' standard under G. L. c. 277, § 72A, and (2) that, in any event, the Commonwealth has denied him his right to a speedy trial on these indictments, guaranteed by art. 11 of the Declaration of Rights of the Massachusetts Constitution and the Fourteenth Amendment to the United States Constitution. We disagree.

The incident from which all charges stem occurred in the early morning of August 8, 1969. A man broke into the apartment of the victim and removed money and a ring from her jewel box. At the time of the theft, she was asleep on the living room couch. The man awakened her, menaced her with a knife, and slapped her. He pushed her into the bedroom, and, as he did so, cut her neck slightly with his knife. In the bedroom, he attempted to have intercourse with her, but failed. After this unsuccessful attempt, she persuaded him to return her ring.

The two then emerged from the bedroom and sat down in the kitchen. The man delivered a long monologue about himself and his life. Subsequently, having finished his discourse, he ordered the victim to return to the bedroom and raped her.

Later on August 8, following a photographic identification by the victim, the Municipal Court of the Dorchester District issued a complaint which charged the defendant with the rape of the victim. No other charges were entered at that time in connection with the incident.

---

[1] The Commonwealth has not challenged the dismissal of the rape conviction by the Appeals Court.

On April 16, 1970, while the defendant was confined to the Massachusetts Correctional Institution at Concord on an unrelated charge, he received written notification, as prescribed by G. L. c. 277, § 72A, of the pendency of the rape complaint in the District Court. Eleven days later, he filed a written application for "a prompt trial or disposition" of the rape charge. Over fourteen months later, on July 18, 1971, the defendant, by letter to the clerk of the District Court, restated his desire to go to court for a probable cause hearing or dismissal of the rape complaint.

This second communication resulted in relatively swift action by the Commonwealth. On August 15, the defendant was brought before the District Court. He was arraigned on the rape complaint and was bound over to the grand jury. On September 16, 1971, the grand jury returned indictments for rape, assault and battery by means of a dangerous weapon, and armed robbery. All indictments were related to the events of August 8, 1969. The defendant filed separate motions to dismiss the rape indictment (September 23, 1971) and the assault and battery and armed robbery indictments (September 29, 1971) for failure to grant him a speedy trial. After a Superior Court hearing at which the defendant testified, the motions were denied. The judge found, without specific reference to either the constitutional provisions or G. L. c. 277, § 72A, that the defendant had not been "actually prejudiced" by the delays in hearing his case.

On March 21, 1972, a jury found the defendant guilty on each of the three indictments.

On appeal the Appeals Court dismissed the rape indictment, holding that the more than fifteen months' interim between the defendant's application for speedy trial and his arraignment in the District Court violated G. L. c. 277, § 72A. The Appeals Court declined to dismiss the remaining indictments on the ground that no complaint, indictment or information had been "pending" at the time of the defendant's application. The Appeals Court ruled also that the defendant's constitutional claims were without merit.

I.

The statute on which the defendant relies, G. L. c. 277, § 72A, provides that penal authorities, upon learning of an "untried indictment, information or complaint . . . pending in any court in the commonwealth" against a prisoner in their custody, must advise the prisoner in writing of these untried charges. The prisoner may then make application in writing "for prompt trial or other disposition" of these charges. Under the statute, trial or other disposition "shall" occur within six months of receipt of the application by the court.

The defendant argues that the six months' period, which began with his April 27, 1970, application for prompt trial of the rape charge, must also define the time period available to the Commonwealth for adjudication of other charges flowing from the same incident. He contends that the assault and battery and robbery charges, though not brought until the September indictments were returned, must be measured against the August, 1969, to August, 1971, period relevant to the rape complaint. This, in the defendant's view, was the manifest legislative intent irrespective of the recurrent use of the word "pending." We cannot agree.

Elementary rules of statutory construction require that each statute be interpreted as enacted. *Davey Bros. Inc.* v. *Stop & Shop, Inc.* 351 Mass. 59, 63 (1966). No portion of the statutory language may be deemed superfluous. *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 352 Mass. 617, 618 (1967). When the statutory language is plain, the words must receive their "usual and natural meaning." *Commonwealth* v. *Thomas,* 359 Mass. 386, 387 (1971). *Tilton* v. *Haverhill,* 311 Mass. 572, 577 (1942). G. L. c. 4, § 6, Third. Statutory language should constitute the principal source of insight into legislative purpose. *Commissioner of Corps. & Taxn.* v. *Chilton Club,* 318 Mass. 285, 288 (1945). The defendant's construction of G. L. c. 277, § 72A, if accepted, would require that we overlook plain statutory language and

deviate from ordinary word meanings. The statutory language applies to an "untried indictment, information or complaint" which is "*pending* in any court in the commonwealth"[2] (emphasis supplied). It does not apply to indictments which may emerge from further consideration of the evidence. The use of the word "pending" necessarily implies that the complaint or indictment must already exist and be awaiting action in a court. It must be a concrete charge, not a mere possibility. This view is reinforced with other specific statutory language: the correction officials must inform a prisoner of the existence of an indictment, information or complaint and of "the court in which it is pending." Even if one were to ignore the word "pending," as urged by the defendant, it is plain that the legislation requires the charge to have status before a court.[3] The charge cannot be a prosecutorial intention. Finally, after application for speedy trial, the court must then dispose of "*such* indictment" (emphasis supplied). Again, the reference is to a particular prior indictment.[4]

Thus, the statute should not be seen as a broad-gauge legislative attempt to help solve the problems underlying the concept of "speedy trial." The statute has a more restricted application. It "establishes a priority for trials of defendants who are already in custody." *Commonwealth v. Stewart*, 361 Mass. 857, 858 (1972). *Commonwealth v. Lauria,* 359 Mass. 168, 171 (1971). It furnishes a ready method for inmates to accelerate action on possible further impediments to their freedom.

---

[2] We note in passing that the language "in any court" was added to each draft of the bill by the Senate. 1961 Senate Doc. No. 563. Prior drafts did not have this language. The Senate evidently invested this phrase with some significance. It was retained.

[3] See the analysis in *Commonwealth* v. *Royce*, 358 Mass. 597, 598 (1971), in which we stressed the posture of the charges before *particular* courts.

[4] Careful review of the legislative history convinces us that, even if the statutory language were considered ambiguous, there is no basis for defendant's construction. See 1959 House Doc. Nos. 473, 1960, 2873; 1960 House Doc. Nos. 578, 584, 3036; 1961 House Doc. No. 2157; 1963 House Doc. Nos. 1232, 3406; 1965 House Doc. No. 219; 1961 Senate Doc. No. 563; 1963 Senate Doc. No. 813. See also Thirty-fifth Report of the Judicial Council, Pub. Doc. No. 144, pp. 52-54 (1959).

We believe the statutory language bespeaks a clear
legislative intention to expedite prosecution of charges
already brought. The statute, in effect, is a "warrant
removal" or detainer removal statute. We, therefore, reject
the implication in the defendant's argument that a single
indictment followed by an application for a speedy trial
compels prosecutors to try or dispose of all possible charges
from a single fact pattern.[5] The application for speedy trial
of the rape complaint could not affect the subsequent
indictments for armed robbery and assault and battery. We
do not decide any question as to the effect of the statute on
successive indictments, informations or complaints relat-
ing to the same offense. See *Commonwealth* v. *Royce,* 358
Mass. 597, 599 (1971); *Commonwealth* v. *Stewart,* 361
Mass. 857 (1972). See also fns. 7, 8, *infra.*


II.


The Sixth Amendment to the Constitution of the United
States provides that "[i]n all criminal prosecutions, the
accused shall enjoy the right to a speedy and public trial."[6]
The rights secured by the speedy trial clause are fundamen-
tal to a system of merciful and even-handed justice.
Through incorporation in the Fourteenth Amendment, the
speedy trial clause guarantees expeditious disposition of
charges in prosecutions under State laws. *Klopfer* v. *North
Carolina,* 386 U. S. 213 (1967). *Commonwealth* v. *Lauria,*

---

[5] Adoption of defendant's argument would encourage district attorneys to over-
indict in an attempt to cover all possible offenses — a result which would seem
further to congest our criminal courts.

[6] The defendant also claims his right to a speedy trial under art. 11 of the
Declaration of Rights of the Massachusetts Constitution. Previously, we have
observed that art. 11 and the Sixth Amendment of the Constitution of the United
States are "analogous mandate [s]." *Commonwealth* v. *Green,* 353 Mass. 687, 690
(1968). On several occasions, we have commingled art. 11 and Sixth Amendment
discussions and have actually disposed of art. 11 questions on the basis of analysis
identical to that used in Sixth Amendment cases. E.g., *Commonwealth* v. *Lauria,*
359 Mass. 168 (1971); *Commonwealth* v. *Horne,* 362 Mass. 738 (1973). For
purposes of this opinion, we treat the Federal and Commonwealth speedy trial
provisions as coextensive.

359 Mass. 168 (1971). *Commonwealth* v. *Horne*, 362 Mass. 738 (1973). A prisoner, incarcerated for another offense, does not forfeit this right solely because of his incarceration. He, too, has a vital interest in securing prompt resolution of his legal status. See *Smith* v. *Hooey*, 393 U. S. 374, 379 (1969); *Dickey* v. *Florida*, 398 U. S. 30 (1970); *Strunk* v. *United States*, 412 U. S. 434, 439 (1973); *Commonwealth* v. *McGrath*, 348 Mass. 748 (1965). Prosecutorial failure to adhere to speedy trial standards necessitates immediate dismissal of charges against the accused. *Strunk* v. *United States, supra*, at 440.

Analysis of the speedy trial guaranty divides into two related strands: a preliminary consideration of the time at which the guaranty attaches and a subsequent plenary consideration of the facts in a particular case in terms of the criteria by which the constitutionality of delays is judged. See *Dickey* v. *Florida*, 398 U. S. 30, 41 (1970).

The United States Supreme Court, in the case of *United States* v. *Marion*, 404 U. S. 307 (1971), has largely answered the threshold question concerning the timing of attachment of the guaranty. The court wrote that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Id.* at 320. By its terms, the court observed, the speedy trial provision applies to "criminal prosecutions" in which the defendant is the "accused." The provision does not encompass the pre-accusation period when a police investigation is ongoing. *Commonwealth* v. *Jones*, 360 Mass. 498 (1971). *Commonwealth* v. *Horan*, 360 Mass. 739 (1972). See *Commonwealth* v. *Gilbert, ante*, 18 (1974). Courts may not "wrench" cases from this "proper context" and language of the Sixth Amendment. *United States* v. *Marion, supra*, at 322. Thus, in the case before us, it would seem that the defendant's right to a speedy trial on charges of assault and battery and armed robbery commenced with the return of indictments against him for those charges on September 16, 1971. At that time, the Commonwealth first alleged

that he had committed those offenses in the course of the episode of August 8, 1969. Prior to return of these indictments, the defendant stood accused of rape alone.

The defendant would distinguish the *Marion* case on the ground that the pre-accusation delay in that case occurred before *any* criminal charges had been proffered. He argues that all charges arising from the August 8, 1969, incident should be considered as one unit on the issue of speedy trial. He urges further that his right to a speedy trial on all offenses linked to the incident attached on the issuance of the rape complaint or, at the least, on the lodging of the warrant at Massachusetts Correctional Institution at Concord.

The defendant attempts to buttress his position by excerpting statements from the *Marion* opinion and applying them to his case: at the time of the complaint's issuance, he "in some way ... [became] an 'accused.' " *United States* v. *Marion,* 404 U. S. 307, 313 (1971); and after the rape warrant had been lodged against him, he was held "to answer a criminal charge." *Id.* at 320. Yet, the defendant refers us to no dispositive post-*Marion* precedent, and none has come to our attention.[7] Accordingly, we proceed to explore defendant's contentions in some detail.

We believe the rule in the *Marion* case controls the instant case. Each independent charge flowing from a given

---

[7] In the most nearly analogous case, *United States* v. *Davis,* 487 F. 2d 112 (5th Cir. 1973), cert. den. 415 U. S. 981 (1974), a trial judge, acting at the government's behest, dismissed a bank robbery indictment so as to permit entry of an additional indictment for conspiracy. The defendants, after conviction on subsequent indictments for conspiracy, bank robbery, and interstate transportation of stolen money, appealed on the ground that, inter alia, the delay between indictment and trial had deprived them of the speedy trial guaranteed by the Sixth Amendment. The Fifth Circuit affirmed the convictions. Without discussion, the court took the return of the second set of indictments as the time when the Sixth Amendment guaranty attached to all indictments.

Though the *Davis* decision fortifies our conclusion in the instant case that Sixth Amendment guaranties attached only when indictments were returned for assault and battery and armed robbery, we do not urge it as conclusive for our decision. The court in the *Davis* case did not explicitly confront the meaning of pre-accusation delay in the Sixth Amendment analysis of the *Marion* case and assumed that the pre-accusation delay in the *Davis* situation should encompass time prior to the return of the specific indictments on which the defendants were convicted. More significantly, the court in the *Davis* case overlooked the *re*indictment for bank robbery. A line of cases in other circuits holds that, when reindictment occurs, the reviewing court must refer back to the time of original

incident must stand on its own. Delay prior to accusation on each charge is inconsequential for Fourteenth Amendment purposes.

Of course, if one charge should constitute a lesser included offense or a greater inclusive offense for the charge first brought,[8] then the delay period would have to relate back to the first accusation. The second charge would be tantamount to a reaccusation on part of the first charge. See *United States* v. *Alo,* 439 F. 2d 751 (2d Cir. 1971), cert. den. 404 U. S. 850 (1971), reh. den. 404 U. S. 961 (1971), cert. den. 414 U. S. 919 (1973); *Stuart* v. *Craven,* 456 F. 2d 913 (9th Cir. 1972). Here, the charges of rape, assault and battery and armed robbery are distinct. They do not overlap substantially. On law and fact, this defendant could reasonably be acquitted of the rape charge without barring the others.[9] The initial complaint on the rape charge did not necessarily implicate the defendant in these other crime categories. At the time of the complaint he had not been accused of the other crimes.[10]

We are aided in assessing the reach of the *Marion* rule by the court's exposition of the purposes behind the Sixth

indictment for its Sixth Amendment analysis. E.g., *United States* v. *Alo,* 439 F. 2d 751 (2d Cir.), cert. den. 404 U. S. 850 (1971), reh. den. 404 U. S. 961 (1971), cert. den. 414 U. S. 919 (1973) (sealed indictment superseded by another more than three years later); *Stuart* v. *Craven,* 456 F. 2d 913 (9th Cir. 1972). The instant case, of course, does not involve reindictment for an identical offense. Nevertheless, this unmentioned conflict of circuits mitigates the force of the *Davis* case for our purposes.

[8] The language is traditional in cases where double jeopardy is to be analyzed. The defendant has been in jeopardy once and that jeopardy bars future prosecutions, if either an included or inclusive offense has once been tried. *Commonwealth* v. *Mahoney,* 331 Mass. 510, 513-514 (1954).

[9] *Commonwealth* v. *Mahoney,* 331 Mass. 510, 512 (1954). See *Commonwealth* v. *DiStasio,* 297 Mass. 347, 356 (1937), cert. den. 302 U. S. 683, 759 (1937); *Commonwealth* v. *Azer,* 308 Mass. 153 (1941). Cf. *Benton* v. *Maryland,* 395 U. S. 784 (1969). Conceivably, assault and battery could be a lesser included charge to rape. See *Commonwealth* v. *McCan,* 277 Mass. 199, 202-203 (1931). However, on the record before us (see 352, *supra*), this is not in issue.

[10] Consideration of pre-accusation delay raises numerous procedural difficulties. Foremost among them is the question how a defendant could prove that the police could have brought a prosecution at a certain time. Protracted inquiry would certainly be necessary. *United States* v. *Marion,* 404 U. S. 307, 321 n. 13 (1971). Every reviewing court would have to attempt the impossible task of second-guessing the prosecutors.

Amendment speedy trial provision: "to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States* v. *Marion,* 404 U. S. 307, 320 (1971), quoting from *United States* v. *Ewell,* 383 U. S. 116, 120 (1966). The court added: "Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States* v. *Marion, supra,* at 320. An arrest on a single charge brings with it a certain quantum of anxiety, concern, economic debilitation, public scorn and restraint on liberty. For this reason, the accused is entitled to a speedy trial to resolve the issues of guilt and innocence. Yet, the arrest cannot be said to generate, in advance, further burdens on the accused owing to charges which *might* be brought. Prison officials cannot use potential criminal liability as a pretext for confining an inmate or for making harsher the terms of confinement. The accused may suffer anxiety and loss of reputation from an ongoing investigation or from the possibility of multiple accusations, but his damage *caused by the anticipated charges* does not exceed the damage permitted under the Fourteenth Amendment while in the *Marion*-type pre-accusation stage. Similarly, anticipated charges do not obstruct attempts to construct a defense for either past charges or new charges.[11]

---

[11] In the *Marion* case, the Federal Trade Commission had subjected the defendant to a cease and desist order three years before indictments were returned. The defendant, in a sense, had already been charged with wrongdoing. He had been alerted to the fact that he was under investigation and, not unreasonably, might have feared subsequent criminal penalties. Yet, the Supreme Court could not credit this anticipation with sufficient damage to invoke the Sixth Amendment. Accord, *United States* v. *Dukow,* 453 F. 2d 1328 (3d Cir. 1972), cert. den. sub nom. *Crow* v. *United States,* 406 U. S. 945 (1972). Similarly, in the instant case, though one charge had been entered against the defendant, anticipation of additional charges could not invoke Fourteenth Amendment guaranties.

In short, the reasons which justify dismissal of indictments for post-accusation deprivation of speedy trial do not compel serious consideration of delay in a pre-accusation period during which another indictment from a single episode binds the accused. When a second set of indictments or warrants issues, they are treated for Fourteenth Amendment analysis as though their predecessor had not existed. Delay is measured from the return of indictments. In the present case, the September indictments invoked the Fourteenth Amendment speedy trial guaranty. The period prior to indictment did not affect the defendant's Fourteenth Amendment rights.

Having identified the point at which the Fourteenth Amendment speedy trial guaranty attached to the defendant's armed robbery and assault and battery indictments, we turn to the test for compliance with the speedy trial requirements of the Fourteenth Amendment. Four factors, "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" must interact in a "difficult and sensitive balancing process." *Barker* v. *Wingo,* 407 U. S. 514, 530, 533. *Commonwealth* v. *Horne,* 362 Mass. 738 (1973). *Commonwealth* v. *Gilbert, ante,* 18, 21 (1974). Each factor must be accorded equal weight. The burden is on the defendant to demonstrate prejudicial delay sufficient to warrant dismissal. *Commonwealth* v. *Jones,* 360 Mass. 498, 502 (1971). *Commonwealth* v. *Gilbert, supra,* at 22. See *United States* v. *Ewell,* 383 U. S. 116 (1966). The defendant has not sustained this burden.

As we noted earlier, the defendant's right to speedy trial for armed robbery and assault and battery attached at the time of his indictment for those offenses. The delay in trial, therefore, must be measured by the interim between indictments on September 16, 1971, and trial on March 21, 1972.[12] Slightly more than six months elapsed between indictment and trial.

---

[12] Arguably, the date of hearing on the defendant's motion to dismiss (February 7, 1972) might be taken for purposes of analysis as the date on which trial commenced. The defendant appears to concede in his brief that February 7, 1972,

In evaluating this delay, it must be considered that orderly criminal proceedings of necessity entail some delay for preparation and hearings. Acceptable delay must be proportional to the complexity of the crime and intractability of the issues. "Ordinary street crime" should go to trial more promptly than an intricate conspiracy case. *Barker* v. *Wingo,* 407 U. S. 514, 531.(1972). In the instant case, the defendant was accused of relatively straightforward offenses. The police completed their investigation shortly after the date of the crimes (August 8, 1969), and the trial transcript is a model of brevity and simplicity. Nevertheless, we do not believe a six months' delay in a time of crowded court dockets and overworked prosecutors is excessive.[13]

The record contains scanty evidence of the reasons for the delay between indictment and trial. The defendant has not established lack of due diligence by the Commonwealth. Similarly, he has not demonstrated deliberate efforts by the Commonwealth to postpone trial. The judge expressly found that no portion of the delay from rape complaint to motion hearing resulted from the intentional actions of the Commonwealth.[14] There is no allegation that docketing was unreasonably deferred. At the time, the defendant did not protest or demand a more expeditious

---

is the most appropriate selection. In a close case, it may be necessary to adopt one such occasion as the beginning of the trial for these purposes but we do not reach or decide this issue. Here, we adopt the date most favorable to the defendant, the date of actual adversary proceedings before a jury.

[13] In other cases, e.g., *Commonwealth* v. *Horne, supra,* and *Commonwealth* v. *Gilbert, supra,* we alluded to a period of delay sufficient to "trigger" searching consideration of the speedy trial question. We have discovered no cases in which a six months' delay caused dismissal. A nine months' period seems to mark the minimum delay for which an appellate court has failed to affirm criminal convictions. See *United States* v. *Butler,* 426 F. 2d 1275 (1st Cir. 1970), cert. den. 401 U. S. 978 (1971); *Commonwealth* v. *McGrath,* 348 Mass. 748 (1965). Cf. *Bishop* v. *Commonwealth,* 352 Mass. 258 (1967). Six months should not, therefore, trigger concern. But see *United States* v. *Ransom,* 465 F. 2d 672, 673, note (D. C. Cir. 1972) (rule promulgated in District of Columbia Circuit: six months' delays are "properly subject to inquiry and need for justification"). We proceed to a generalized factor analysis in the absence of a "trigger," because the *Barker* case mandates such multifactor inquiry.

[14] The defendant does not challenge this finding. There is some question whether it is supported on the record.

hearing. The delay may well have resulted from the congested dockets in the Superior Court, but this, in and of itself, does not justify unreasonable delay.

Such explanation for the delay does not count heavily in favor of the defendant. Though the Commonwealth must shoulder some responsibility for the turgid court docket (see *Barker* v. *Wingo, supra,* at 531), the defendant must share the over-all responsibility for the hiatus between indictment and trial. His motion to dismiss resulted in a hearing in the Superior Court and, undoubtedly, set back the trial date. Cf. *Commonwealth* v. *Gilbert, supra.* We cannot quantify the responsibility apportioned to each party. However, on this record, we treat reasons for the delay as a factor which provides some very limited support for the defendant's Sixth Amendment claim.

The defendant did not attempt to accelerate progress from indictments to trial with a specific demand for speedy trial. Failure to demand speedy trial does not automatically cause waiver of the speedy trial right. *Commonwealth* v. *Horne,* 362 Mass. 738, 741-742 (1973), citing *Barker* v. *Wingo.* Rather, the court must consider demand or lack of demand to be an indication of the severity of prejudice to defendants. As the Supreme Court wrote, "The more serious the deprivation, the more likely a defendant is to complain." *Barker* v. *Wingo, supra,* at 531. For this purpose, we view the defendant's motion to dismiss as the functional equivalent of a specific demand for speedy trial on the armed robbery and assault and battery indictments. It is sufficiently emblematic of concern.

The final factor, prejudice to the defendant, does not materially aid the defendant. In his brief, he relies on the effect of the long delay from rape complaint to trial. He asserts that delay impeded his rehabilitation, depressed him, and cost him an opportunity for concurrent sentencing. He claims that the victim's identification "necessarily" became less reliable as time elapsed.

Consistent with our earlier statements, we decline to consider prejudice suffered because of preindictment delay. The defendant has not demonstrated substantial

prejudice owing to postindictment delay. It is true that the certainty of eyewitnesses erodes as years pass. See *United States* v. *Butler,* 426 F. 2d 1275, 1277 (1st Cir. 1970), cert. den. 401 U. S. 978 (1971). This loss of memory does not always appear clearly etched in the record. *Barker* v. *Wingo, supra,* at 532. Yet, such gaps in the proof may redound to the defendant's benefit. If prosecution witnesses cannot recall events with sufficient clarity to convince the jury, the defendant will be acquitted. The defendant must, therefore, substantiate his claim that delay prejudiced *his* defense. *United States* v. *Ewell,* 383 U. S. 116, 122 (1966). *United States* v. *Alo,* 439 F. 2d 751, 755 (2d Cir. 1971), cert. den. 404 U. S. 850 (1971), reh. den. 404 U. S. 961 (1971), cert. den. 414 U. S. 919 (1973). Cf. *Barker* v. *Wingo,* 407 U. S. 514, 534 (1972). On the record before us, we are not persuaded that delay in trying the indictments precluded the defendant from making his best defense. He presented no witnesses whose memory had become fogged. He suggested the name of no witness who had died or moved away in the interim. Cf. *Dickey* v. *Florida,* 398 U. S. 30, 38 (1970); *United States* v. *Macino,* 486 F. 2d 750 (7th Cir. 1973). In fact, the defense rested after the conclusion of the prosecution's case in chief.

The defendant, himself, did not testify. Nothing in the record leads to the conclusion that his failure is attributable to a lapse of memory caused by the passage of time. Quite the contrary, the judge found "that the defendant's memory on April 27, 1970 as to the events of August 8, 1969, was no better (and presumably would have been no better within six months after that date) than it is today."

The Commonwealth's case could have been prejudiced by delay. The prosecution's "star witness," the victim, was an eyewitness, whose memory could have faded. Any uncertainty on the witness stand would have greatly undermined her credibility with the jury. Yet, she made a positive identification in court and was not discredited or shaken in her testimony by cross-examination. We see no prejudice to the defendant in the trial.

Similarly, there is no convincing argument that the

defendant suffered material prejudice in his conditions of confinement. Generally, delay in trial of untried indictments may deprive an inmate of opportunities for parole, concurrent sentencing and rehabilitation. *Smith* v. *Hooey,* 393 U. S. 374, 378 (1969). *Strunk* v. *United States,* 412 U. S. 434, 439 (1973). *Moore* v. *Arizona,* 414 U. S. 25, 27 (1973). See *Commonwealth* v. *Green,* 353 Mass. 687 (1968). The prospect of an extension of sentence, posed by an untried charge, may subject the inmate to great stress or anxiety. *Strunk* v. *United States, supra.* The defendant Gove has presented no evidence that this has indeed been his plight as a result of the indictments at issue here. His brief refers to the general possibilities for prejudice mentioned above. It does not particularize those possibilities or apply them to this defendant or these charges. The element of prejudice to the confined prisoner, thus, remains speculative and insubstantial. See *United States* v. *Ewell,* 383 U. S. 116, 122 (1966). In the light of the relatively short six months' delay and absence of contrary proof, we conclude there was no material prejudice to the defendant.

Accordingly, we hold that the Commonwealth did not deny the defendant a speedy trial in contravention of his Fourteenth Amendment and art. 11 rights.

*Judgments affirmed.*