COMMONWEALTH *vs.* ELLEN G. BECKETT.

Middlesex.   February 8, 1977. — September 14, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law,* Speedy trial, Confrontation of witnesses.  *Practice, Criminal,* Speedy trial, Charge to jury, Directed verdict.  *Conspiracy.  Evidence,* Hearsay, Common criminal enterprise.  *Larceny. False Pretenses.*

A defendant indicted with her husband for conspiracy to commit larceny was not unconstitutionally denied a speedy trial by a delay of fifty-five months between indictment and trial where it appeared that, although the principal reason for the delay was court congestion and the presiding justices may not have "assigned importance" to the case, some delay apparently was caused by the unavailability of counsel, or a change of counsel, for the husband, and that the de-

fendant failed to show a diligent, or even casual, attempt to obtain a speedy trial, not moving to dismiss the indictment for that cause, until less than three months before trial commenced [331-333]; the evidence offered by the defendant in support of the motion to dismiss did not demonstrate any substantial prejudice to her from the delay, and the judge was plainly warranted in finding that she was not prejudiced [334-335]. LIACOS, J., concurring, with whom ABRAMS, J., joined.

At the trial of a wife and her husband for conspiracy to commit larceny by false pretenses from the Commonwealth, by misrepresenting to the Department of Public Welfare that the husband lived apart from his wife and their child with the intent that the wife should receive aid to families with dependent children, there was no constitutional error in the admission in evidence of a statement made during the period of the conspiracy out of the wife's presence to a witness by the husband, who did not testify and which was admissible against him and tending to prove that he was living with his wife during such period, where it appeared that at the conclusion of the Commonwealth's case in chief the judge ruled that it had made out a prima facie case of conspiracy and he subsequently charged that a statement of one defendant could be considered against the other if the jury first found that the statement was in furtherance of a common objective to steal from the Commonwealth. [335-341]

At the close of the Commonwealth's case in chief at the trial of an indictment against a wife and her husband for conspiracy to commit larceny by false pretenses, by misrepresenting to the Department of Public Welfare that the husband lived apart from his wife and child with the intent that the wife should receive aid to families with dependent children, the denial of the wife's motion for a directed verdict was justified by evidence that both the wife and her husband knew of the unlawfulness of their receipt of funds from the Commonwealth, that the husband was living with his wife during all or a major portion of the period of the conspiracy, and that the wife and her husband acted in a common endeavor to defraud the Commonwealth. [341-343]

INDICTMENT found and returned in the Superior Court on June 16, 1971.

A motion to dismiss was heard by *Rutledge,* J., and the case was tried before him.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Alfred D. Ellis* for the defendant.

*James W. Sahakian,* Special Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant appeals from her conviction of conspiracy to steal money of a value of more than

$100 from the Commonwealth. The charge was based on a claim that the defendant and her husband, Paul S. Beckett, conspired to commit larceny by false pretenses by misrepresenting to the Department of Public Welfare that her husband did not live with the defendant and their daughter, with the intended result that the defendant would appear to qualify for, and thus to receive, aid to families with dependent children (AFDC).

The defendant argues that (1) she was denied her constitutional right to a speedy trial, (2) evidence of an admission made by her husband outside her presence was improperly admitted against her, and (3) her motion for a directed verdict was improperly denied. We transferred the appeal here on our own motion. There was no error.

1. We consider first the defendant's contention that the judge erred in denying her motion to dismiss the indictment for failure to grant a speedy trial. The indictment was returned in June, 1971. The motion to dismiss was filed on October 31, 1975. Trial commenced on January 20, 1976.

A delay of fifty-five months between indictment and trial is substantial and requires serious consideration whether the defendant was denied a speedy trial in violation of her constitutional rights. This delay is longer than the delay in any other case in which we have held that a defendant's constitutional right to a speedy trial was not infringed. See, e.g., *Commonwealth* v. *Gilbert,* 366 Mass. 18, 21 (1974) (thirty-one months); *Commonwealth* v. *Horne,* 362 Mass. 738, 739 (1973) (forty-eight months). See also *Commonwealth* v. *Burhoe,* 3 Mass. App. Ct. 590, 591 (1975) (thirty-eight months). In *Commonwealth* v. *Green,* 353 Mass. 687, 689-690 (1968), we concluded that prejudice was necessarily inherent where the delay was fifteen years, held that the defendant was denied his right to the speedy trial guaranteed by art. 11 of the Declaration of Rights of the Constitution of the Commonwealth, and indicated that the indictments must be dismissed.

In cases involving a claim that a defendant was denied his constitutional right to a speedy trial, we have applied

the criteria set forth in *Barker* v. *Wingo*, 407 U.S. 514, 530-533 (1972). See, e.g., *Commonwealth* v. *Dabrieo*, 370 Mass. 728, 734-738 (1976); *Commonwealth* v. *Boyd*, 367 Mass. 169, 179-181 (1975); *Commonwealth* v. *Gove*, 366 Mass. 351, 361-365 (1974); *Commonwealth* v. *Gilbert*, *supra* at 21-23. In the *Barker* case, where the period between indictment and trial was sixty months, the Supreme Court of the United States indicated four factors which should be weighed: (1) the length of the delay; (2) the reasons for the delay; (3) the extent, if any, to which the defendant asserted his right to a speedy trial; and (4) the extent of any prejudice to the defendant resulting from the delay. *Barker* v. *Wingo, supra* at 530. The Supreme Court did not conclude that a delay of sixty months was inherently a deprivation of the defendant's rights. Each relevant factor must be weighed in the circumstances of the case. We shall consider the factors, in addition to the length of the delay, which are set forth in *Barker* v. *Wingo*, *supra* at 530.

In this case the principal reason for the delay was court congestion. There is no suggestion that the Commonwealth intentionally delayed the defendant's trial. However, court congestion is not the responsibility of the defendant and must be weighed against the Commonwealth in assessing the reasons for the delay. But the weight to be given to such a cause for delay is not so heavy as a deliberate prosecutorial attempt to delay a trial. *Commonwealth* v. *Dabrieo, supra* at 736 n.2 (1976). *Commonwealth* v. *Gove, supra* at 363. *Commonwealth* v. *Burhoe*, 3 Mass. App. Ct. 590, 594 (1975). *Strunk* v. *United States*, 412 U.S. 434, 436-437 (1973). *Barker* v. *Wingo, supra* at 531. Although "[c]rowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable" (*Dickey* v. *Florida*, 398 U.S. 30, 38 [1970]), the deficiencies of the system cannot be a defense to a claim of the denial of a prompt trial. *United States* v. *Fay*, 505 F.2d 1037, 1040-1041 (1st Cir. 1974). Another reason for the delay, which the defendant asserted in support of her motion, was the fact that "the presiding justices have not

assigned importance to this case." This circumstance, which is a natural consequence of congested dockets, also must be weighed against the Commonwealth.

Not all the delay, however, was the responsibility of the Commonwealth. Some delay apparently was caused by the unavailability of counsel, or a change of counsel, for her husband, the codefendant below. At one time the defendant requested a brief continuance because of a change of counsel. On another occasion, the docket shows that the case was taken off the list at the defendant's request. If, as the defendant asserts, this docket entry was in error, the defendant should have offered evidence during the hearing on the motion to dismiss in order to demonstrate that error. She did not do so.

The defendant has failed to show a diligent, or even casual, attempt to obtain a speedy trial. She did not object at any time to the numerous continuances which were granted. On May 28, 1974, she requested that the case be taken off the list. She filed no motion for a speedy trial, and, as far as the record shows, she first raised the question of her right to a prompt trial in October, 1975, when she moved to dismiss the case for failure to grant a speedy trial. Cf. *Commonwealth* v. *Green,* 353 Mass. 687, 688-689 (1968), where motions for a speedy trial were filed and denied six and eight years after the date of the indictments and then such a motion was filed fifteen years after the indictment which we ordered to be allowed.

A defendant who asserts that his right to a speedy trial has been abridged presents a strong case if he has established on the record that he diligently sought a trial. Delay, however, may benefit a defendant in particular circumstances, and a record which shows the defendant's indifference to the date of trial cannot strongly support a claim of the denial of his right to a speedy trial. *Commonwealth* v. *Gilbert,* 366 Mass. 18, 23 (1974). *Barker* v. *Wingo, supra* at 531-532, 534-536. Here the first assertion of the denial of the defendant's right to a speedy trial occurred on October 31, 1975, and her trial commenced on January 20, 1976, not an inordinate further delay.

We consider finally the question whether the defendant was prejudiced by the delay. Although a delay may be so great as to be inherently prejudicial, especially in the absence of a contrary demonstration by the prosecution (*Commonwealth* v. *Green, supra* at 690), we have held generally that a defendant has the burden of showing prejudice to his defense sufficient to warrant dismissal. *Commonwealth* v. *Gove*, 366 Mass. 351, 361 (1974), and cases cited. A delay of over four and one-half years is substantial, and, if the defendant had been pressing diligently for trial during that period, or at least during a substantial later portion of that period, we would accept the proposition that the burden falls on the Commonwealth to establish the absence of prejudice to the defendant. Here, however, the defendant has not created a presumption of prejudice by persistently seeking a prompt trial, and we conclude that she has the burden of proving prejudice to her from the delay.

The evidence offered by the defendant in support of her motion to dismiss for want of a speedy trial does not demonstrate any substantial prejudice to her. The judge was plainly warranted in finding that she was not prejudiced. There was no claim that any witness was unavailable, nor any proof that any witness, potentially helpful to the defendant, had forgotten significant facts. The defendant put a potential Commonwealth witness on the stand in support of her motion. However, the failure of that prosecution witness to recall events and circumstances was not prejudicial to the defendant. The prejudice must be to the defense. See *Commonwealth* v. *Gove, supra* at 364; *Barker* v. *Wingo, supra* at 532, 534; *United States* v. *Shepherd*, 511 F.2d 119, 124 (5th Cir. 1975) (faded memory of government witness aids defendant). In short, the defendant did not prove prejudice. There was no pre-trial incarceration, and there was no showing of anxiety or concern of the accused, who did not testify on the motion to dismiss. *Barker* v. *Wingo, supra* at 532.[1] There was no showing

---

[1] No doubt the necessity of appearing in court from time to time when her case was called was an annoyance to the defendant. However,

that, as the defendant argues, the prosecution witnesses' ability to identify her husband was solidified to her prejudice because those witnesses had numerous opportunities to identify him when the case was called from time to time.

The defendant argues that circumstances at the trial demonstrate that she was prejudiced because witnesses' memories suffered from the passage of time. We have reviewed the transcript of the entire trial, with particular attention to those portions referred to by the defendant, and fail to find any failure of memory of any witness which was prejudicial to the defendant. The witnesses for the Commonwealth appear to have suffered failures of memory which may have weakened its case. No actual prejudice to the defendant has been shown. See *United States* v. *Latimer*, 511 F.2d 498, 502 (10th Cir. 1975).

Considering the lack of prejudice to the defendant and her failure to assert her right to a speedy trial for over four years after her indictment, we conclude that, in spite of the inordinate delay, the defendant was not denied her constitutional rights in the circumstances. We add that we will not tolerate court congestion as an adequate ground for denying a reasonably prompt trial to a defendant who actively pursues his constitutional right to such a trial.

2. We come then to the first of the defendant's two arguments challenging her conviction on the basis of alleged errors in the course of her trial. She objects to the admission of evidence of a statement made by her husband, out of her presence, which tended to prove that he was living with her at 24 Jefferson Park, Cambridge, during the period of the alleged conspiracy to steal money from the Commonwealth. The fact that the defendant and her husband were living apart was a condition of her eligibility for AFDC.

Paul Beckett did not testify at the trial, and the defend-

that concern did not prompt her to object to continuances or to move for a speedy trial until her motion to dismiss was filed on October 31, 1975. No other interference with her liberty was shown. See *Moore* v. *Arizona,* 414 U.S. 25, 26-27 (1973).

Commonwealth *v.* Beckett.

ant argues, relying on *Bruton* v. *United States,* 391 U.S. 123 (1968), that she was denied her constitutional right to confront a witness against her when her husband's extrajudicial statement was admitted in evidence. The Commonwealth argues that his statement was admissible under that exception to the hearsay rule which permits the introduction in evidence of certain statements of co-conspirators.[2]

In the course of the Commonwealth's case, the prosecutor called one Elinor Feeley as a witness, and the defendant immediately requested a voir dire. Feeley then testified that she first met Paul Beckett in September, 1967, and saw him frequently thereafter until March, 1971. She met him often at a friend's house in Waltham. He told her many times that he lived at 24 Jefferson Park. Feeley was receiving AFDC. He indicated a willingness to help her financially but was troubled that there would be a connection between Feeley's social worker and the defendant's social worker. He said that he was concerned that he would be sent to jail "if welfare should find out" that he lived at 24 Jefferson Park.

After a conference in chambers, the judge ruled that certain matters testified to by Feeley would be excluded, such as the reference to going to jail, but ruled that certain other testimony was admissible, including Paul Beckett's statement that he lived at 24 Jefferson Park. The defendant excepted to the judge's ruling admitting Paul Beckett's statement concerning his place of residence.

The jury were then recalled, and Feeley testified that she met Paul Beckett in September, 1967, and saw him many times until approximately December, 1970. To her knowledge he lived at 24 Jefferson Park during this time. Feeley testified, over the defendant's objection, that in the later part of September or the beginning of October, 1970,

---

[2] In *Commonwealth* v. *White,* 370 Mass. 703, 708 n.5 (1976), we noted that this court has followed the general practice of calling the rule of evidence a hearsay exception. The Federal Rules of Evidence treat it as an "Admission by party-opponent" which is characterized as nonhearsay. See Fed. R. Evid. 801 (d) (2) (E).

Paul Beckett told her that he lived at 24 Jefferson Park. She visited 24 Jefferson Park once in the summer of 1969 with Paul Beckett and saw his clothes there. She called him at 24 Jefferson Park and talked with him at least a dozen times.

The judge reserved decision on the question whether a prima facie case of conspiracy had been established, which would permit Paul Beckett's statement to Feeley to be considered against the defendant,[3] and he instructed the jury that that evidence was restricted to Paul Beckett and should "not . . . be taken at this time against Mrs. Beckett . . . ." At the conclusion of the Commonwealth's case in chief the judge ruled that the Commonwealth had made a prima facie case of conspiracy and subsequently charged the jury that a statement of one defendant could be considered against the other if they first found that the statement was in pursuance of a common objective to steal from the Commonwealth.[4]

We consider the defendant's argument first in terms of *Bruton* v. *United States*, 391 U.S. 123 (1968). In that case, the Supreme Court of the United States held that an extrajudicial statement of a codefendant, who did not testify, which incriminated the defendant, violated the defendant's constitutional right to confront and to cross-

---

[3] In such a situation, the judge must rule, on the basis of the evidence apart from any such admission, that sufficient evidence has been adduced to support a fair inference that a conspiracy existed and to support a finding that the other defendant or defendants had joined in the conspiracy so that admissions of all who are found to have joined in the conspiracy, made during the course of and in the pursuance of the conspiracy, may become applicable against all the conspirators. *Commonwealth* v. *Kurth,* 359 Mass. 729, 735-736 (1971). *Commonwealth* v. *Kiernan,* 348 Mass. 29, 58 (1964), cert. denied sub nom. *Gordon* v. *Massachusetts,* 380 U.S. 913 (1965). *Commonwealth* v. *Benesch,* 290 Mass. 125, 132-133 (1935). The judge must rule that the evidence warrants a finding that such a statement was made in the course of and in furtherance of the conspiracy. The judge should not disclose his rulings to the jury because, as we note later, the jury will be instructed to consider the same questions to determine whether it should make the findings which the judge concluded were warranted.

[4] The defendant has not challenged the judge's instructions to the jury in any respect.

examine a witness against him and that the error could not be cured by instructions to the jury that the statement was admissible only against its maker. The Court observed that the case did not involve "any recognized exception to the hearsay rule insofar as [Bruton] is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause." *Id.* at 128 n.3. The Court cited authorities dealing with two such exceptions, (a) an admission of a party, and (b) a statement by a coconspirator. *Id.* Since the *Bruton* decision, this and other courts have held in particular circumstances that a defendant's "rights under the Confrontation Clause of the Sixth Amendment were not violated where hearsay evidence of a statement of a co-conspirator inculpating the defendant was admitted without opportunity by the defendant to cross-examine the co-conspirator." *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 220 (1973), and cases cited. See *Dutton* v. *Evans,* 400 U.S. 74, 86-87 (1970) (plurality opinion). We have also recognized since the *Bruton* case that certain admissions of a codefendant, which are not directly inculpatory of another defendant, are admissible. See *Commonwealth* v. *French,* 357 Mass. 356, 373 (1970), judgments vacated as to the death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972). Here, clearly Paul Beckett's statement was admissible against him as an admission and its introduction in evidence, accompanied by appropriate limiting instructions to the jury, did not violate the teaching of the *Bruton* case. Therefore, there was no constitutional violation in permitting the jury to hear Paul Beckett's admission. The question remains, however, whether that statement properly could be considered against the defendant as a coconspirator.

The defendant acknowledges the continued vitality of the exception to the hearsay rule which permits a statement of one coconspirator to be used against another in particular circumstances. Her argument is that that rule has no application here. We have stated this rule in recent opinions. *Commonwealth* v. *White,* 370 Mass. 703, 708-709

(1976). *Commonwealth* v. *Pleasant,* 366 Mass. 100, 103-104 (1974). "[W]here there is proof . . . that two or more persons are engaged in a common criminal enterprise, the acts and declarations of one, during the enterprise and in furtherance of it, affect all." *Commonwealth* v. *Chapman,* 345 Mass. 251, 255 (1962). Not every statement of a coconspirator is admissible against a defendant who is absent at the time of the utterance; such a statement "must be made both during the pendency of the cooperative effort and in furtherance of its goal." *Commonwealth* v. *Pleasant, supra* at 104. *Commonwealth* v. *White, supra* at 708-709, and cases cited.

The defendant contends that the admitted statement does not fall within the hearsay exception because (1) the statement was not made during the pendency of a common design or a cooperative effort, and (2) it was not made in furtherance of the goals of the conspiracy. As to the first contention, the argument is that there was no showing that there was an agreement, a cooperative effort, between the defendant and her husband to engage knowingly in an unlawful act. We will consider the question whether there was evidence warranting a finding of a joint criminal intent when we discuss the next issue, the propriety of the denial of the defendant's motion for a directed verdict. It is sufficient at this point to note that, if there was a common design to obtain money from the welfare department by false pretenses, Paul Beckett's statement was made during the period of that conspiracy, that is, between August 16, 1968, and March 1, 1971, as alleged in the indictment.

We consider the second aspect of her argument, the defendant's claim that her husband's statement was not admissible against her because it was not made in furtherance of the goals of the conspiracy. This argument rests on two grounds. First, there is no limitation that a coconspirator's statement is in furtherance of the conspiracy, and hence admissible, only if it is made to the person or agency against whom the conspiracy is directed. See *Commonwealth* v. *Kiernan,* 348 Mass. 29, 58-59 (1964),

cert. denied sub nom. *Gordon* v. *Massachusetts*, 380 U.S. 913 (1965). The second claim, that there was no evidence to show that the statement was made in furtherance of the conspiracy, is more troublesome. From evidence which was presented on the voir dire, it appears that the defendant's husband made the statement in the course of a conversation which was designed to encourage Feeley not to disclose facts to public authorities which could have led to criminal proceedings against him and to the cessation of AFDC paid to the defendant. Thus, the judge was warranted in ruling that the statement was made to protect, and hence to further, the purpose of the conspiracy. The difficulty is that, because of the defendant's objection and the judge's ruling, the circumstances surrounding the statement were never heard by the jury. Although the issue does not appear to have been presented to this court previously, we think it is clear that the jury must be instructed that, before they may consider the statements of one coconspirator against another, they must make definite findings on the same questions which the judge must pass on before he may permit the jury to consider whether that evidence may be used against all. See *Commonwealth* v. *Dahlstrom*, 345 Mass. 130, 134 (1962); *Commonwealth* v. *Mannos*, 311 Mass. 94, 106 (1942).[5] Among the findings which the jury must make, as the judge instructed them, is that the statement was made in furtherance of the conspiracy.

If we accept the defendant's argument that there was no evidence before the jury which would warrant a finding that Paul Beckett's statement was made in the furtherance of the conspiracy, there was no significant error because the judge in effect instructed the jury that, in the

---

[5] The "in furtherance of the conspiracy" element of this rule of evidence is not applicable in all jurisdictions and has not been indorsed by all commentators, although it remains an element in the Federal Rules of Evidence. See authorities cited and the discussion in 4 J.B. Weinstein, Evidence par. 801(d)(2)(E)[01], at 801-143 to 801-144 (1976). See also 1 J.B. Weinstein, Evidence par. 104[05](2) (1976 & Supp.).

absence of such evidence, they could not consider his statement against the defendant. A direct instruction to that effect would have been preferable, but we do not regard the judge's treatment of the matter, even if a technical error, as affecting the defendant's substantive rights and thus as requiring reversal of the conviction. See *Commonwealth* v. *Shea,* 323 Mass. 406, 415 (1948).

3. Finally, we consider the defendant's argument that her motion for a directed verdict should have been allowed. She asserts that the evidence did not warrant a finding that she "intended to conspire to steal money from the Department of Public Welfare."[6] The motion for a directed verdict was filed at the close of the Commonwealth's case in chief, and, therefore, we assess the evidence as of that moment, viewing it in the light most favorable to the Commonwealth. *Commonwealth* v. *Greene,* 372 Mass. 517, 520 n.2 (1977). *Commonwealth* v. *Kelley,* 370 Mass. 147, 149 (1976).

A person's intention may be shown from circumstances and need not, and often cannot, be established by direct evidence. See *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975); *Commonwealth* v. *Stasiun,* 349 Mass. 38, 50 (1965). An inference, if not forbidden by some rule of law, need only be reasonable and possible; it need not be necessary or inescapable. See also *Commonwealth* v. *Nelson,* 370 Mass. 192, 200-201 (1976); *Commonwealth* v. *Schnackenberg,* 356 Mass. 65, 74 (1969); *Commonwealth* v. *Albert,* 310 Mass. 811, 819 (1942). The evidence must be analyzed collectively to determine if it proves the conspiracy. *Commonwealth* v. *Kelley,* 359 Mass. 77, 86 (1971). *Commonwealth* v. *Stasiun, supra* at 51.

The defendant contends that the crime of larceny by false pretenses is a statutory crime only and, therefore, is not malum in se but only malum prohibitum. From this,

---

[6] If there was evidence warranting the jury's finding a common enterprise to take money unlawfully from the Commonwealth, that same evidence would support the judge's finding that Paul Beckett's statement concerning his residence was made during the pendency of a common design or cooperative effort.

she argues that the Commonwealth has to prove not only that she intentionally joined in a conspiracy to do what was an unlawful act but that she knew the illegal element involved in what she and her husband intended to accomplish. See *Commonwealth* v. *Kelley*, 359 Mass. at 87; *Commonwealth* v. *Benesch*, 290 Mass. 125, 134-135 (1935). Even if larceny by false pretenses is malum prohibitum, the evidence amply warranted a finding that both the defendant and her husband knew of the unlawfulness of the receipt of funds from the Commonwealth in these circumstances.[7]

We start with the view that, even considered apart from his hearsay admission concerning his place of residence, the evidence supported a finding that Paul Beckett was living at 24 Jefferson Park during all or a major portion of the period of the alleged conspiracy. Although that evidence may have been only circumstantial, it warranted the inference that he was not merely a visitor to the premises. For example, there was evidence that his clothes were at the apartment, that he was reached there by telephone many times, that he and his automobile were seen often in the vicinity, and that he used that address as his for various purposes. There was also evidence that the defendant and her husband knew that the payment, or at least the level of payment, of public assistance to the defendant depended on her husband's not residing with her and their child.[8]

We, therefore, reach the only remaining question,

---

[7] The defendant's argument that an act which is criminal solely by reason of a statute can never be malum in se appears untenable. See *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 221-222 (1942); *Commonwealth* v. *Adams,* 114 Mass. 323, 324 (1873). The question is not whether the crime is statutory, but rather whether the act is by "its very nature wrongful and detrimental to the public interest." *Commonwealth* v. *O'Rourke, supra* at 221. In any event, we have said that larceny by false pretenses was a common law offense in this Commonwealth. *Commonwealth* v. *Burton,* 183 Mass. 461, 464 (1903).

[8] Indeed, in her brief the defendant grants that "the government probably showed that defendant Ellen Beckett was aware of the law that made it a crime to obtain money by false pretenses from the Department of Public Welfare."

namely, whether the evidence warranted a finding that the defendant and her husband acted in a common endeavor to defraud the Commonwealth. We think the inference of common enterprise was permissible on the evidence. Both the defendant and her husband told an employee of the Cambridge public welfare office that he was not living at home. The defendant made numerous other representations to the same effect. Paul Beckett said in September, 1968, that he was living with friends as "a very temporary arrangement" and that he could be reached at his place of employment. Early in 1971, another employee of the Department of Public Welfare spoke with Paul Beckett. She testified that "he told me that he couldn't tell me specifically where he had lived." He said that he spent the better part of the summer of 1970 living in his car and that he lived sometimes with an aunt and uncle and also with a brother.

From evidence that both the defendant and Paul Beckett were representing that he did not live at 24 Jefferson Park, when in fact he did live there, and from Paul Beckett's inconclusive statements concerning where he did live, an inference was warranted that there was a common design or cooperative effort between the defendant and Paul Beckett. This permissible conclusion on the evidence justified the denial of the defendant's motion for a directed verdict. The inference was not compelled but was warranted.

*Judgment affirmed.*

LIACOS, J. (concurring, with whom Abrams, J., joins). This case involves a delay between the date of indictment and trial longer than any delay heretofore considered by this court (fifty-five months), although not quite so long as that involved in *Barker* v. *Wingo,* 407 U.S. 514 (1972) (sixty months). I agree that the majority has correctly stated and applied the prevailing constitutional doctrine under both the Federal and State Constitutions. I agree further that the record supports the finding of the motion

judge that the defendant failed to show either intentional delay by the prosecution or prejudice to the defendant.

This case, however, seems an appropriate one in which the court should recognize that although court congestion is systemic and chargeable to the Commonwealth, a stronger burden of responsibility belongs on the prosecution. It is, after all, the district attorneys who control the trial lists. G. L. c. 278, § 1. The right to control the trial list given prosecutors by this statute imposes a corresponding obligation on them. Prosecutors have an affirmative duty to maintain current lists of cases for trial. Thus, it seems a fair inference on a record such as this, that while, as the majority state, "[t]he defendant has failed to show a diligent, or even casual, attempt to obtain a speedy trial," neither did the prosecution seek to bring the matter to trial. Court congestion may be the cause in part, but surely nothing in this record or generally known to the court justifies the view that congestion dictated the lengthy delay involved here.

In such circumstances, the prosecution could well be charged with failing to meet its obligation under the statute, as well as to both the Commonwealth and the defendant. Dilatory tactics by this defendant are not shown on this record; hence, if delay is not caused by intentional design of the prosecution nor its length explained by court congestion, a proper conclusion is prosecutorial disinterest or neglect.

On such a record it seems to me this court should take the stance based on its general superintendence powers under G. L. c. 211, § 3, and the duties of prosecutors under G. L. c. 278, § 1, that the burden falls on the prosecution in a proceeding on a motion to dismiss to (a) justify or explain the delay, and (b) prove lack of prejudice to a defendant. Failing proof of either, the indictment ought to be dismissed.

I concur in the result because I believe the constitutional rights of the defendant were not shown to be violated. Nor do I think it fair to the prosecution to apply a standard, such as suggested here, in a retroactive way. I

note that the problem most likely will be resolved in a more satisfactory manner if Proposed Rule of Criminal Procedure 37, now under consideration by this court, is adopted in some form.[1] What I have suggested here would be, however, a useful standard to apply where the facts indicate it appropriate in the interim period until a new rule becomes effective.

---

[1] See especially proposed subsection (c) which provides:
"DISMISSAL FOR PREJUDICIAL DELAY. Notwithstanding the fact that a defendant is not entitled to a dismissal under subdivision (b) of this rule, a defendant shall, upon motion, be entitled to a dismissal where the court after an examination and consideration of all attendant circumstances determines that: (1) the conduct of the prosecuting attorney in bringing the defendant to trial has been unreasonably lacking in diligence and (2) this conduct on the part of the prosecuting attorney has inured to the prejudice of the defendant."