COMMONWEALTH vs. REINALDO RIVERA RODRIGUEZ.[1]

Essex.  March 5, 1980. — May 13, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Constitutional Law,* Speedy trial.  *Practice, Criminal,* Dismissal.

A judge was warranted in allowing a motion to dismiss an indictment on
    the ground that the defendant was denied his constitutional right to a
    speedy trial where there was sufficient evidence to support the judge's
    findings that the Commonwealth was responsible for most of an
    eighteen-month delay in bringing the defendant to trial, that the de-
    fendant seasonably and persistently asserted his right to a speedy trial,
    and that the defendant was prejudiced as a result of the delay in his
    parole eligibility and ineligibility for prison programs with respect to
    an unrelated sentence.  [651-655]

INDICTMENT found and returned in the Superior Court
Department on September 7, 1978.

The case was heard by *Morse, J.,* on a motion to dismiss.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Lila Heideman,* Assistant District Attorney, for the Com-
monwealth.

*Jane Kenworthy Lewis* for the defendant.

QUIRICO, J.  This is an appeal by the Commonwealth
from the ruling of a judge of the Superior Court allowing a
motion that an indictment against the defendant be dis-
missed on the ground that he was denied his constitutional
right to a speedy trial.  See Mass. R. Crim. P. 15 (b) (1), 378
Mass. 883 (effective July 1, 1979).  We conclude that, on

---

[1] The indictment describes the defendant as "Reinaldo Rivera Rodri-
guez, otherwise known as Raymond Hernandez, otherwise known as
Roberto Baez."

the basis of the record before us, the action of the judge, though not required, was permitted and we therefore affirm the judgment of dismissal.

The parties stipulated in writing to most of the facts relating to the motion to dismiss the indictment, and we summarize those facts. The defendant was arrested in Lawrence, on February 24, 1978, for possession of a sawed-off shotgun. He was arraigned on that charge in the District Court of Lawrence on February 25, 1978, and after a probable cause hearing held on March 27, 1978, he was bound over to the grand jury for Essex County. On May 1, the grand jury indicted him for unlawfully carrying on his person "a certain dangerous weapon, to wit: a sawed-off shotgun" without a license therefor. On May 4, 1978, he was arraigned on the indictment in the Superior Court, Essex County, and counsel was appointed to represent him. On June 7, 1978, a judge allowed certain motions filed by the defendant and granted him leave to file further pretrial motions. He then continued the case for trial on June 12, 1978. On the latter date the case was not reached and the defendant filed a motion for speedy trial. The case was then continued to June 16, 1978, for trial.

On June 16, 1978, the Commonwealth filed a motion to amend the indictment to charge unlawful possession of a sawed-off shotgun instead of unlawful carrying thereof. The motion was denied. Thereupon the prosecutor made an indorsement of nolle prosequi on the indictment. The indorsement stated that "the facts of the within indictment warrant a further consideration of the Grand Jurors relative to the District Attorney's presentation of evidence indicating that the defendant committed a more serious crime."

The Essex County grand jury did not sit thereafter until September, 1978, and on September 7 it returned an indictment charging the defendant with the unlawful possession of a sawed-off shotgun. The indictment arose out of the same factual situation as the earlier indictment. A warrant

for the arrest of the defendant on the new indictment was issued on October 3, 1978.[2]

On March 30, 1979, the defendant, while serving a sentence in a New York State prison, signed a "Petition under the Interstate Detainer Act," which was filed in the Superior Court, Essex County, on April 17, 1979.[3] The defendant was brought from New York State to Massachusetts on July 25, 1979, and was arraigned on July 31, 1979. The parties held a conference on his case on August 7, 1979.[4] The case appeared on the Superior Court trial list for August 23, 1979, and it was continued to August 28, 1979, at the request of the defendant, due to the illness of his counsel.

We turn now to a summary of some facts and proceedings not covered by the stipulation. This additional information relates solely to the second of the two indictments returned against the defendant, the only indictment involved in this appeal.

We first summarize information appearing in the docket entries which are included in the record before us.

(a) On April 17, 1979, the defendant filed a motion captioned "Motion for Speedy Trial," the body of which asked

---

[2] There is nothing in the record to indicate when, where, how, or even if this warrant was ever served on the defendant.

[3] The stipulation does not further describe this "petition." However, we take notice of the following entries on the docket which is a part of the record before us:

"1979 Apr 17   2   Defendant's Motion for Speedy Trial. . . .

          17   3   Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictment, Information or Complaints. . . .

          19   4   Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictment, Information or Complaints."

[4] Although the stipulation does not so state, we assume that the defendant was still serving a sentence in a New York prison when he was brought to Massachusetts for arraignment and further proceedings in the present case, and that he remained here until September 11, 1979, when his motion to dismiss the second indictment was allowed.

that the court "grant him a speedy trial and disposition pursuant to M.G.L. c.278§11-20R [*sic*]; M.G.L. c.277§72A; and the laws and decisions of the Commonwealth of Massachusetts." Although the citation of "M.G.L. c.278,§11-20R" does not appear to be relevant to speedy trials, G. L. c. 277, § 72A, was in effect at the time of the motion, and would appear to apply to persons in custody in other States. Cf. *Commonwealth* v. *McGrath*, 348 Mass. 748, 752-753 (1965). (Chapter 277, § 72A, was repealed on July 1, 1979, by St. 1979, c. 344, § 42.) The motion is adequately to be understood as a request for a speedy trial. We treat it as such.

(b) On August 14, 1979, the defendant filed an unsworn motion to dismiss the indictment based on the claim that "he has been denied his right to a speedy trial as guaranteed under the Sixth and Fourteenth Amendments to the Constitution of the United States and Article XI of the Massachusetts Bill of Rights." He then filed a series of motions for discovery, for suppression of evidence and for certain trial procedures, but none of these motions is involved in this appeal. On August 28, there is an entry of "[h]eld in order for trial," and on September 4, an entry of "[c]ontinued to September 10, 1979 — first case for trial." On September 10, 1979, the parties filed the stipulation described above.

(c) On September 11, 1979, the defendant filed two documents, one entitled "Affidavit in Support of Motion to Dismiss," and the other entitled "Supplemental Affidavit in Support of Motion to Dismiss." The motion to dismiss was allowed by the court on September 11, 1979, presumably after a hearing held on the same day. On the next day the Commonwealth appealed from the allowance of that motion. The appeal was originally entered in the Appeals Court and is now before us pursuant to its transfer by this court sua sponte.

On October 15, 1979, the judge filed a document entitled "Findings of Fact and Rulings." He adopted first all of the facts agreed upon by the parties, using the precise language of their stipulation. He then added the following findings:

"In addition I find the following facts:

"17.    The defendant appeared at Salem on September 11, 1979 for trial. The delay was principally caused by the mistake in the first indictment and the failure of the Commonwealth to seek to rectify the mistake until the eve of trial in June of 1978. The Grand Jury did not sit in Essex County in July and August of 1978. Nevertheless, the *nolle prosequi* and second indictment were plainly undertaken to circumvent the denial of the motion to amend the first indictment. There is no satisfactory explanation for the further delay from September 1978 to September 1979.

"18.    The resulting delay from June 1978 to September 1979 has prejudiced the defendant. I infer and so find that the detainer lodged in New York has interfered with the defendant's parole eligibility and his opportunity to participate in programs available at his place of detention in New York. Furthermore, the lapse of time has probably dimmed the memory of witnesses who might be favorable to the defendant as well as the memory of prosecution witnesses concerning details that might be elicited on cross-examination which might be favorable to the defendant.

"19.    The Commonwealth contends it was unaware of the defendant's whereabouts from October 1978 until April of 1979. I place no weight on this contention inasmuch as the defendant was surrendered or arrested on the process of the New York authorities in the Courtroom in Essex County on June 16, 1978 when the *nolle prosequi* was filed."

The Commonwealth contends that some of the additional findings contained in paragraphs 17, 18, and 19 which are

quoted above, and particularly the findings that the defendant was prejudiced by the delay in trial, are not supported by evidence and are therefore erroneous. It is clear that the judge, in deciding the motion to dismiss, received no evidence and that he acted solely on the basis of the stipulation of facts submitted by the parties and whatever other information was before him as a part of the court records. The latter included the affidavit and supplemental affidavit filed by the defendant on September 11, 1979, in support of his motion to dismiss. The Commonwealth filed no opposing affidavits. See Mass. R. Crim. P. 13 (a) (2) and (3), 378 Mass. 871 (effective July 1, 1979).

In his affidavit the defendant alleges that he was held in custody in lieu of bail from the date of his arrest on the shotgun charge on February 24, 1978, until the first indictment was nol prossed on June 16, 1978; that on the latter date he was immediately arrested on a fugitive warrant from the State of New York and held in custody in lieu of bail in the jail at Lawrence, Massachusetts, until he was taken to Buffalo, New York; that he remained in custody in New York until February, 1979, when he was sentenced to a term of up to three years in the New York State prison for assault, which sentence he was still serving on the date of the affidavit. He further alleged that he was not informed of the second indictment against him in Massachusetts until after he had been sentenced in New York; that because of the outstanding Massachusetts indictment he was (a) ineligible for rehabilitation programs in the prison in New York; and (b) confined in a maximum security prison in New York, and (c) that under New York State law he would have been eligible for a concurrent sentence if he had been tried and sentenced in Massachusetts first; whereas Massachusetts has no corresponding provision to allow him to serve a sentence concurrently with a prior New York sentence.

In his supplemental affidavit the defendant alleges that between July, 1978, when he was taken to New York, and February, 1979, when he was sentenced, he engaged in plea bargaining on the charge he faced there; that on the

sentence of up to three years' imprisonment which he received he would have been eligible for parole after ten months if Massachusetts had not lodged a detainer on the second indictment which had been returned against him here on September 7, 1978; and that because of the Massachusetts detainer he was not paroled, and "must serve twenty-four months of [his] sentence [and he] will be released in June of 1980."[5]

The judge obviously relied on the allegations in the defendant's affidavit and supplemental affidavit in holding (a) that the Commonwealth was responsible for most of the delay in bringing the defendant to trial, and (b) that the defendant was prejudiced in a number of ways by that delay. Most of the inferences drawn by the judge in reaching his factual conclusions are probably within the legal limits of permissible inferences, except in one respect. We question whether anything in the record supports the factual inference in par. 18 of the judge's findings that "the lapse of time has probably dimmed the memory of witnesses who might be favorable to the defendant as well as the memory of prosecution witnesses concerning details that might be elicited on cross-examination which might be favorable to the defendant." There was no stipulation, allegation, or other basis for this inference. If such an inference were permitted, solely by reason of the fact that, at the time the judge allowed the motion to dismiss, almost eighteen months had elapsed since the defendant was first arrested, it would contradict many of the holdings of this court and place many pending prosecutions in jeopardy. See, e.g., *Commonwealth* v. *Look*, 379 Mass. 893, 898, 904-905 (1980) (delay of more than four years, "no significant failure of memory on crucial issues"); *Commonwealth* v. *Beckett*, 373 Mass.

---

[5] This court has been informed by a letter from the office of the district attorney for the Eastern District, dated April 30, 1980, that the defendant was released from the New York prison on April 22, 1980, and is now being held in the Clinton County, New York, jail on the Massachusetts detainer pending rendition proceedings, which have been started by the Commonwealth.

329, 331, 334 (1977) (fifty-five month delay, no "proof that any witness, potentially helpful to the defendant, had forgotten significant facts"). The key United States Supreme Court case delineating the factors a court must consider, *Barker* v. *Wingo,* 407 U.S. 514, 530-533 (1972), involved a delay of sixty months, and no inherent prejudice was found. See *id.* at 530. We think that such a conclusion is speculative on the record in this case, and that it must be disregarded.[6]

We now reach the question whether the remaining facts found and the conclusions reached by the judge on the basis of the stipulation, the affidavit and supplemental affidavit of the defendant and the information contained in the record before him warrant the dismissal of the indictment.

This appeal has been argued on both sides on the assumption that it is to be decided on the basis of the legal principles discussed in *Barker* v. *Wingo, supra.* That Court applied "[a] balancing test [which] necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." The Court then continued: "We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" (footnote omitted). *Id.* at 530.[7]

---

[6] In *Commonwealth* v. *Gove,* 366 Mass. 351, 364 (1974), we said: "It is true that the certainty of eyewitnesses erodes as years pass. . . . This loss of memory does not always appear clearly etched in the record. . . . Yet, such gaps in the proof may redound to the defendant's benefit. If prosecution witnesses cannot recall events with sufficient clarity to convince the jury, the defendant will be acquitted. The defendant must, therefore, substantiate his claim that delay prejudiced *his* defense" (citations omitted) (emphasis in original).

[7] While the list of factors to be considered in determining whether a defendant has been deprived of his right to a speedy trial is now frequently attributed to the decision in *Barker* v. *Wingo, supra* at 530, substantially the same list appears in earlier writings and decisions. See Note, The Right to a Speedy Criminal Trial, 57 Colum. L. Rev. 846,

The question whether a defendant has been deprived of his constitutional right to a speedy trial has been involved in a considerable number of cases decided by this court and by the Appeals Court since the 1972 decision in *Barker* v. *Wingo, supra.* See, e.g., *Commonwealth* v. *Beckett, supra* at 331-335; *Commonwealth* v. *Fields,* 371 Mass. 274, 278-282 (1976); *Commonwealth* v. *Dabrieo,* 370 Mass. 728, 734-741 (1976); *Commonwealth* v. *Boyd,* 367 Mass. 169, 179-181 (1975); *Commonwealth* v. *Gove,* 366 Mass. 351 (1974); *Commonwealth* v. *Horne,* 362 Mass. 738 (1973).

A reading of these and the many other cases decided by the courts of this Commonwealth confirms the statement in *Barker* v. *Wingo, supra* at 530, that courts are compelled "to approach speedy trial cases on an *ad hoc* basis." The factors to be considered, as identified in *Barker*, are repeated in many of these decisions, but each decision invariably turns on a careful analysis of the particular factual situation. We therefore consider those recognized and oft repeated factors in the context of this case.

1. *Length of delay.* For the purpose of this decision the defendant's right to a speedy trial is to be measured from February 24, 1978, when he was first arrested and held in custody. *United States* v. *Marion,* 404 U.S. 307, 313-320 (1971). *Commonwealth* v. *Horan,* 360 Mass. 739, 741-742 (1972). *Commonwealth* v. *Blaney,* 5 Mass. App. Ct. 96, 97 (1977). We also assume for the purpose of this decision that the first indictment which ended with the entry of a nolle prosequi, and the second indictment which was dismissed by the Superior Court on September 11, 1979, for delay in prosecution, constituted a single prosecution arising out of a single incident. See *Commonwealth* v. *Gove, supra* at 359, and cases cited. Measured thus, at the time the order of dismissal was entered, the prosecution had spanned a period of about eighteen and one-half months without the defendant's having been brought to trial.

861-866 (1957). See also *Commonwealth* v. *Thomas,* 353 Mass. 429, 431 (1967); *United States* v. *Simmons,* 338 F.2d 804, 807, cert. denied, 380 U.S. 983 (1965); *Von Cseh* v. *Fay,* 313 F.2d 620, 623 (2d Cir. 1963).

The length of the delay is not alone decisive on the issue of speedy trial. In various decisions the courts have tolerated much longer delays than the time involved in this case, absent prejudice to the defendant resulting from the delay, or intentional conduct by the prosecution to frustrate the defense. In *Barker* v. *Wingo, supra*, the delay was about five years, *id.* at 516-518, and in *Commonwealth* v. *Beckett, supra*, it was four years and seven months. *Id.* at 331, and concurring opinion of Liacos, J., at 343. Nevertheless, the convictions in both cases were affirmed. These decisions cannot be interpreted to establish that relatively short delays can never support a conclusion of denial of a speedy trial. Much depends on other circumstances in each case. See generally *Commonwealth* v. *Thomas*, 353 Mass. 429 (1967).

2. *The reason for the delay.* The defendant was in the custody of the Commonwealth continuously from the date of his arrest on February 24, 1978, to June 16, 1978, when the prosecutor nol prossed the indictment against him without bringing him to trial. He continued in the custody of the Commonwealth thereafter on the charges lodged against him by the State of New York, until he was brought to the latter State in July, 1978. The judge found that the delay in bringing the defendant to trial in Massachusetts was due initially to the Commonwealth's mistake in the first indictment and its failure to seek to rectify it until the eve of the trial in June, 1978. He further found that "the nolle prosequi and second indictment were plainly undertaken to circumvent the denial of the motion to amend the first indictment" and that "[t]here is no satisfactory explanation for the further delay from September 1978 [when the second indictment was returned] to September 1979." The conduct of the prosecutor in this case is in many respects comparable to that of the prosecutor in *Commonwealth* v. *Thomas, supra*, where we upheld the dismissal of an indictment.

3. *Defendant's assertion of his right to speedy trial.* It is clear from the record before us that the defendant has at all times seasonably and persistently asserted his right to a

speedy trial in this case. The first indictment against him was returned on May 3, 1978, and on June 12, 1978, he filed a motion for a speedy trial. That is the indictment which terminated with the entry of a nolle prosequi.

When the second indictment was returned against the defendant in Massachusetts on September 7, 1978, he was being held in custody in the State of New York awaiting trial on other charges. He alleges in his affidavit in support of his motion to dismiss that he did not learn of this new indictment until after he had been sentenced in New York in February, 1979. While still in custody in New York the defendant executed several documents relating to the second Massachusetts indictment, and they were filed with the clerk of the Superior Court, Essex County, on April 17 and April 19, 1979. One of these documents was the motion for speedy trial discussed earlier in this opinion. These efforts by the defendant in his "assertion of his speedy trial right, then, [are] entitled to strong evidentiary weight in determining whether [he] is being deprived of the right." *Barker* v. *Wingo, supra* at 531-532.

The only delay attributable to the defendant was a brief continuance granted to him from August 23 to August 28, 1979, due to the illness of his counsel. That five day delay is of no consequence in the face of the long delay for which the judge found the prosecutor responsible.

4. *Prejudice to the defendant.* The judge in this case expressly found that the delay from the entry of the nolle prosequi of the first indictment in June, 1978, to the dismissal of the second indictment in September, 1979, "has prejudiced the defendant." He then went into detail as follows: "I infer and so find that the detainer lodged in New York has interfered with the defendant's parole eligibility and his opportunity to participate in programs available at his place of detention in New York."

The Commonwealth contends that there was no evidence to support any finding that the delay in trial prejudiced the defendant. This argument disregards the fact that the defendant's motion to dismiss was supported by an affidavit

and a supplemental affidavit. The filing of an affidavit in support of facts relied upon in a pretrial motion is required by Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (effective July 1, 1979).[8] Subsection (a) (3) of the same rule, which was in effect at the time the defendant filed his motion to dismiss, recognizes the fact that "opposing affidavits" may be filed in connection with such motion. The Commonwealth filed no opposing affidavit. In these circumstances, the judge, although not required to do so, was permitted to rely on the facts alleged in the affidavits of the defendant in making his findings. His findings on prejudice to the defendant as a result of alleged delay in his parole eligibility and ineligibility for prison programs, are supported by the record.

5. *Totality of facts and circumstances.* Although we have discussed separately each of the four factors commonly associated with the issue of speedy trial, we do not thereby mean to suggest that the proof or absence of proof on any one factor will be decisive on the issue. We recognize the rule in this regard to be that stated in *Barker* v. *Wingo, supra* at 533, in the following language: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution" (footnote omitted). This language was repeated in the later decision of *Moore* v. *Arizona,* 414 U.S. 25, 26 (1973).

---

[8] An affidavit in support of a pretrial motion was formerly required by G. L. c. 277, § 74 (repealed by St. 1979, c. 344, § 42, effective July 1, 1979).

6. *Conclusion.* We conclude that the judge was warranted in dismissing the indictment which was returned against the defendant by the grand jury on September 7, 1978. Our rescript shall issue forthwith. Mass. R. A. P. 23, as amended, 367 Mass. 921 (1975).

*Judgment affirmed.*