COMMONWEALTH vs. ROBERT J. LUTOFF.

Essex. June 8, 1982. — September 15, 1982.

Present: BROWN, ROSE, & GREANEY, JJ.

*Constitutional Law,* Speedy trial. *Practice, Criminal,* Speedy trial.

A delay of four years in bringing a criminal defendant to trial, caused by
court congestion and a heavy caseload in the district attorney's office,
required dismissal of the indictments against the defendant where the
defendant had diligently attempted to obtain a prompt trial and
where the trial record showed that the lapse of time had weakened his
defense. [438-447]

INDICTMENTS found and returned in the Superior Court
on September 15 and 16, 1976.

Motions to dismiss were heard by *Griffin,* J., and *Lappin,*
J., and the cases were tried before *Adams,* J.

*Jerry E. Benezra* for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Com-
monwealth.

GREANEY, J. The defendant has appealed from jury con-
victions on two pairs of indictments charging him with
burning a building and burning insured property. The in-
dictments arose out of two fires, on November 18, 1974, and
August 4, 1975, at the House of Lebanon, a restaurant in
Gloucester owned by the defendant and his wife.[1] The de-
fendant contends that he has been deprived of his right to a
speedy trial as required by the Sixth and Fourteenth
Amendments to the United States Constitution and art. 11
of the Massachusetts Declaration of Rights. See *Common-*

---

[1] It appears that title to the real estate and buildings was in the name of
the defendant and his wife, while the restaurant business was owned and
managed by a corporation in which the defendant and his family held the
controlling interests.

*wealth* v. *Hanley*, 337 Mass. 384, 387, cert. denied, 358 U.S. 850 (1958); *Commonwealth* v. *Gove*, 366 Mass. 351, 356 n.6 (1974). We review orders entered by different judges of the Superior Court denying two separate motions to dismiss the indictments for lack of speedy trial filed by the defendant on April 2, 1979, and May 9, 1980, respectively. Our review is conducted in light of the events at the trial.

*The motion to dismiss filed on April 2, 1979 (first motion).* This motion was heard on May 14, 1979, on affidavits filed by defense counsel and the prosecutor, and the testimony of two witnesses. Our facts are drawn from the judge's written findings, uncontroverted material contained in counsels' affidavits,[2] and the docket entries.

The indictments in question (together with a fifth indictment, which was subsequently dismissed as duplicitous) were returned by an Essex County grand jury on September 15 and 16, 1976. The defendant was promptly arraigned on all five indictments and released on personal recognizance. Counsel for the defendant, Mr. George L. Sacco, seasonably secured various orders for discovery. On February 4, 1977, he wrote a letter to the criminal list clerk of the Superior Court in Essex County (with a copy to the district attorney's office), requesting that the indictments be placed on the trial list for the second or third week of March, 1977. On February 10, 1977, the assistant district attorney assigned to prosecute the case, Mr. Thomas J. Barrett, advised Mr. Sacco by letter that there would be "no [trial] sitting in March and possibly none in April." Mr. Bar-

---

[2] Although the rules of criminal procedure were not in effect when this motion to dismiss was filed and heard, an affidavit setting forth the factual grounds in support of such a motion was required by G. L. c. 277, § 74 (repealed by St. 1979, c. 344, § 42, effective July 1, 1979). The same requirement is now imposed by Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979). A judge is permitted to rely upon uncontroverted facts alleged in affidavits in making findings on a motion to dismiss for lack of speedy trial. *Commonwealth* v. *Rodriguez*, 380 Mass. 643, 654 (1980). The judge's findings with respect to the defendant's first motion indicate that she accepted several undisputed facts in the affidavits as to the issues of the defendant's assertion of his speedy trial right and the reasons for delay.

rett stated, however, that since "your letter . . . obvious[ly] indicat[es] you are ready for trial," we "will get your discovery motions answered shortly" and "[o]ur office will place [the case] on the trial list for the next session we do have."

On March 4, 1977, the defendant filed a motion for speedy trial on the ground "that any delay . . . will cause him to suffer undue hardship and violate his rights under the United States Constitution and our State Constitution." This motion, however, was not marked for hearing. On June 10, 1977, the Commonwealth complied with the discovery orders. On June 23, 1977, Mr. Sacco was permitted to withdraw as counsel, the defendant was found indigent, and Mr. Geoffrey C. Packard of the Massachusetts Defenders Committee was appointed to represent him. On June 23, 1977, Mr. Packard spoke to Mr. Barrett and advised him that the case "would have to be tried rather than disposed of in some other manner." Counsel apparently agreed that, due to a crowded docket in July and the lack of sessions in August, the case would not appear on a trial list until September or October, 1977. The case, however, did not appear on any trial list during the remainder of 1977.

On February 17, 1978, the case was placed on a list in the "C" session of the Superior Court in Essex County for the purpose of assigning a trial date. There, the case was set for trial on March 14, 1978. On that date, however, the Commonwealth failed to move for trial because Mr. Barrett was engaged in another criminal trial. On March 17, 1978, Mr. Packard withdrew as the defendant's counsel and Mr. Elliot M. Weinstein was appointed to succeed him.[3] On April 15, 1978, the "C" session was disbanded and all cases then pending on that session's docket, including the defendant's case, were restored to the regular docket.

---

[3] The docket does not reflect a formal appointment and appearance by Mr. Weinstein until March 20, 1979. The information in the text appears in part from Mr. Barrett's affidavit, and in part from the docket, and is confirmed by the subsequent assignment of the July 17, 1978, trial date. The Commonwealth does not dispute the fact that Mr. Weinstein was actually representing the defendant as of March 17, 1978.

On May 23, 1978, the case was again called for the pur-
pose of setting a trial date. A judge of the Superior Court
scheduled July 17, 1978, for trial. On that date, however,
the case was not on the list, and it never appeared on any
trial list thereafter. On April 2, 1979, the defendant moved
to dismiss the indictments "because the Commonwealth has
failed to afford a speedy trial . . . [as] guaranteed . . . by
. . . the United States Constitution and . . . the Massachu-
setts Declaration of Rights."

After considering these facts, the judge found that the
passage of thirty-two months since the return of the indict-
ments was "certainly sufficient to trigger an inquiry into
whether the defendant has been denied his constitutional
right to a speedy trial." She further determined that the
defendant had never requested a continuance, that the
delay was due to "congestion of the criminal docket and the
heavy caseload of the district attorney's office," and that
"[t]he actions of the defendant have not caused the delay."
The judge found, however, that the defendant had not
shown that the delay had resulted in prejudice. She con-
cluded that the lack of demonstrated prejudice outweighed
the other three elements in the speedy trial analysis, dis-
cussed *infra*, and denied the motion.[4] The defendant
seasonably objected to that order.

*The motion to dismiss filed on May 9, 1980 (second mo-
tion).* Following the denial of the first motion, more than a
year passed without assignment of the case for trial. On
May 9, 1980, the defendant moved again to dismiss the in-
dictments because of deprivation of his constitutional right
to a speedy trial. In this motion, the defendant alleged that
the case was by then forty-four months old, that a material
witness for the defense regarding the November, 1974, fire
had died, and that an important witness regarding the Au-

---

[4] The defendant alleged that he had been prejudiced because the lack of
a trial had prevented him from obtaining employment and because two
defense witnesses had become unavailable. The evidence at the hearing
on the motion was sufficient to warrant the judge's findings that the prej-
udice claimed had not been established.

gust, 1975, fire had moved to California and lacked the means to return to Massachusetts to testify.

Another judge held a hearing on the motion on July 30, 1980. This judge considered the affidavits of counsel,[5] the findings made by the judge on the first motion, and the defendant's testimony. At the hearing, an assistant district attorney, Ms. Diane M. Kottmyer, indicated that the case had been assigned to her in January, 1980, after Mr. Barrett had left the district attorney's office. She stated that she had been unable to try the case because of commitments involving defendants who were already incarcerated. At the conclusion of the hearing the judge ruled from the bench that the defendant had not established prejudice. He found that other witnesses were available to testify to the facts which would have been addressed by the deceased witness, and that the defendant had failed to establish the relevance of the testimony of the California witness. He further stated his opinion that there had been no substantial change in circumstances since the denial of the first motion, "except that another year has gone by." The judge concluded that the motion should be denied, but added that the indictments would be dismissed unless they were tried in the September, 1980, session. Trial began on September 15 and ended on September 26, 1980.

The seminal United States Supreme Court case on the right to a speedy trial is, of course, *Barker* v. *Wingo*, 407 U.S. 514 (1972). In that case, the Supreme Court formulated the now familiar four factors to be considered in deter-

---

[5] These affidavits were the same in all material respects as the affidavits considered at the earlier hearing. See note 2, *supra*. They were, however, updated to include events after June 25, 1979, the date on which the first motion was denied. The defendant also filed affidavits by Mr. Sacco and Mr. Packard, his two predecessor counsel, which alleged that they had done nothing while representing the defendant which would waive his right to a speedy trial. There is no dispute about this fact. We also note that the judge, had he chosen, could have decided this motion to dismiss under the rules of criminal procedure but apparently chose, in his discretion, not to do so. See Mass.R.Crim.P. 1A(2), 378 Mass. 843 (1979).

mining whether a defendant has been deprived of his constitutional right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant resulting from the delay. *Id.* at 530-533. The application of these factors requires a "balancing test, in which the conduct of both the prosecution and the defendant are weighed," with each case to be decided on an "*ad hoc basis*," after careful consideration of its particular facts. *Id.* at 530. Also pertinent is the rule of review that the subsidiary findings of fact made by the judges below are to be accepted absent clear error, but that their ultimate conclusions of law on constitutional questions, while entitled to deference, are open to reexamination. See *Commonwealth v. Moon*, 380 Mass. 751, 756 (1980), and cases cited; *Commonwealth v. Angivoni*, 383 Mass. 30, 33 (1981), and cases cited. Based on these principles, we analyze the facts of this case.

a. *Length of delay.* Since the defendant was not in custody prior to the return of the indictments on September 15 and 16, 1976, his right to a speedy trial attached on that date. *United States v. Marion*, 404 U.S. 307, 320-321 (1971). *Commonwealth v. Blaney*, 5 Mass. App. Ct. 96, 97 (1977). The four-year delay prior to the commencement of trial on September 15, 1980, while not dispositive by itself, is unquestionably sufficient to require further inquiry whether the defendant was denied a speedy trial in violation of his constitutional right. See *Commonwealth v. Horne*, 362 Mass. 738, 739, 743 (1973) (forty-eight month delay); *Commonwealth v. Gilbert*, 366 Mass. 18, 21 (1974) (thirty-one month delay); *Commonwealth v. Boyd*, 367 Mass. 169, 179-180 (1975) (fourteen month delay); *Commonwealth v. Beckett*, 373 Mass. 329, 331 (1977) (fifty-five month delay); *Commonwealth v. Look*, 379 Mass. 893, 898, cert. denied, 449 U.S. 827 (1980) (fifty-two month delay). We think "[t]he length of the delay here is clearly to be weighed against the Commonwealth, absent an adequate explanation for that delay." *Commonwealth v. Look, supra* at 898.

b. *Reasons for the delay.* The judge who heard the first motion to dismiss found reasons for the delay in "congestion of the criminal docket" and "the heavy caseload of the district attorney's office."[6] These findings were subsequently adopted by the judge who ruled on the second motion to dismiss. It has not been suggested that the Commonwealth purposely delayed the defendant's trial. Nevertheless, it has been said that "court congestion is not the responsibility of the defendant," *Commonwealth* v. *Beckett, supra* at 332, and that "the deficiencies of the system cannot be a defense to a claim of the denial of a prompt trial," *ibid.*, citing *United States* v. *Fay,* 505 F.2d 1037, 1040-1041 (1st Cir. 1974). The record in this case leaves little doubt that most of the delay occurred as the result of the prosecutors' becoming preoccupied with other cases. For example, on February 10, 1977, Mr. Barrett promised the defendant in writing that he would be afforded a prompt trial. Shortly thereafter, Mr. Barrett was put on notice that the case could not be plea bargained. Yet he failed to have the case placed on a trial list until a full year had passed, and when the case was ultimately reached for trial on March 14, 1978, he was unavailable for trial. It can be inferred that the case was not tried when rescheduled on July 17, 1978, for the same reason. Thereafter, no effort was made by the prosecutor to assign the case for trial for nearly another year, at which juncture the defendant moved for dismissal. Astonishingly, still another year elapsed after the denial of that motion without the case being tried. At that point, the defendant again formally moved for dismissal, and Ms. Kottmyer,

---

[6] It would have been helpful in this case if reasons such as "court congestion" and the "heavy caseload of the district attorney's office" were supported by subsidiary findings of fact depicting the prevailing state of the criminal dockets in the county in question, and the pressing nature of the business in the district attorney's office. For example, it would be of assistance to know whether the "C" session in the Superior Court in Essex County, to which this case was assigned in early 1978, was a session charged with the disposition of old criminal cases or an extra session designed to try pending criminal cases.

who had by then been assigned the case, conceded that she could not have tried it because of other commitments.

The case itself was not unusually complex. The transcript of the trial reveals that basic investigation and preparation of the case was relatively straightforward, and should have been completed about the time the Commonwealth complied with the discovery orders. The finding of the judge who ruled on the first motion, as adopted by the judge who passed on the second motion — that none of the delay could be attributed to the defendant — is well warranted and forecloses any contention that the defendant had engaged in dilatory tactics.[7]

We think the Commonwealth cannot escape blame on the basis that the delay was occasioned by institutional failures or by the need to dispose of cases of incarcerated defendants. See *United States* v. *Favaloro*, 493 F.2d 623, 625 (2d Cir. 1974); *United States* v. *Vispi*, 545 F.2d 328, 333-334 (2d Cir. 1976). General Laws c. 278, § 1, as amended by St. 1974, c. 228, gives prosecutors the primary right to control trial lists.[8] It has aptly been pointed out that this right "imposes a corresponding obligation on [prosecutors] . . . to maintain current lists of cases for trial." *Commonwealth* v. *Beckett, supra* at 344 (Liacos, J., concurring). Consequently, prosecutors must take affirmative action to bring cases to trial, particularly where, as here, the accused has pressed for an early confrontation with his accusers. After giving the Commonwealth's administrative difficulties their fair due, see *Dickey* v. *Florida*, 398 U.S.

---

[7] In particular, this finding obviates any argument that the defendant's change of counsel resulted in any postponement of the case. It appears that the defendant's several counsel were always prepared to back up their requests for a speedy trial had the case been put to trial.

[8] This statute provides as follows: "At each session of the superior court for criminal business, the district attorney, before trials begin, shall make and deposit with the clerk, for the inspection of parties, a list of all cases to be tried at that session, and the cases shall be tried in the order of such trial list, unless otherwise ordered by the court for cause shown. Cases may be added to such list by direction of the court, on its own motion or upon motion of the district attorney or of the defendant."

30, 38 (1970), we conclude that the lengthy periods of time which elapsed without disposition of this case require that the second factor in the *Barker* test be "weighed quite heavily against the Commonwealth." *Commonwealth* v. *Look*, 379 Mass. at 899-900.

c. *Assertion of the right.* A defendant has a responsibility to assert his right of speedy trial. A timely assertion is to be given "strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker* v. *Wingo, supra* at 531-532. See *Commonwealth* v. *Beckett*, 373 Mass. at 333, ("A defendant who asserts that his right to a speedy trial has been abridged presents a strong case if he has established on the record that he diligently sought a trial"). There is no question that this defendant diligently attempted to obtain a prompt trial, first by letter to the criminal list clerk and informal request to the district attorney's office, later by formal although unmarked motion to dismiss, and finally by two separate motions to dismiss predicated on constitutional grounds and supported by affidavits specifying prejudice. In our view, the lack of a motion to dismiss between March 4, 1977, and April 2, 1979, should not be held against the defendant because he could, and presumably did, rely on the appearance of the case on various trial lists and its scheduling for trial on March 14, 1978, and July 17, 1978, as some indication of good faith efforts by the prosecution to satisfy his demand. On this element, we conclude that the defendant acted diligently in asserting his right to a speedy trial.

d. *Prejudice.* It is stated in *Commonwealth* v. *Beckett*, (at 334), that a "delay of . . . [four years] is substantial, and, if the defendant had been pressing diligently for trial during that period, or at least during a substantial later portion of that period, we would accept the proposition that the burden falls on the Commonwealth to establish the absence of prejudice to the defendant." Here also the defendant's persistent efforts to obtain a trial indicate his belief that he had been prejudiced by the delay. These efforts are sufficient to create "a presumption of preju-

dice."[9] *Commonwealth* v. *Beckett, supra* at 334. Contrast *Commonwealth* v. *Fontaine*, 8 Mass. App. Ct. 51, 54-55 (1979), and cases cited.

*Barker* v. *Wingo*, at 532-533, identifies the interests which are protected by the speedy trial guarantee. These interests include prevention of oppressive pretrial incarceration, minimization of the defendant's anxiety, and limitation of the possibility that his defense will be impaired.[10] The latter is of fundamental importance "because the inability of a defendant adequately to prepare [or present] his case skews the fairness of the entire system." *Id.* at 532. See *United States* v. *Graham*, 538 F.2d 261, 265 (9th Cir.), cert. denied, 429 U.S. 925 (1976). The circumstances are sufficient to invoke the rule announced in the *Beckett* decision.[11] We conclude that the Commonwealth has not met the burden therein imposed.

An examination of the trial record reveals evidence of prejudice.[12] As in most arson cases, there was no direct

---

[9] The reasons for this presumption have been stated as follows: "Prejudice to . . . defendants because of . . . long unjustified delay in bringing . . . [a] case to trial 'may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years'." *United States* v. *Blaustein*, 325 F. Supp. 233, 238 (S.D.N.Y. 1971), quoting from *United States* v. *Mann*, 291 F. Supp. 268, 271 (S.D.N.Y. 1968).

[10] The prevention of oppressive pretrial incarceration is not implicated in this case since the defendant was not incarcerated prior to trial and his sentences have been stayed pending disposition of this appeal.

[11] We note that the defendant's brief put the Commonwealth on notice that he was seeking application to the facts here of the burden-shifting principles discussed in *Beckett*. The Commonwealth has briefed the case on an alternative assumption that it would be required to establish the absence of prejudice.

[12] We are cognizant that we are reviewing actions taken by judges on two *pretrial* motions to dismiss for lack of speedy trial. In view of the defendant's claim that he suffered prejudice at trial, we deem it appropriate to examine the entire trial transcript with particular attention to those portions referred to by the defendant to ascertain whether the claim has been substantiated. Cases in this area have all proceeded on the basis that the prejudice element of the analysis can be satisfied by facts manifested

evidence that the defendant had set either fire, and the Commonwealth relied upon circumstantial evidence to establish the defendant's guilt beyond a reasonable doubt. In addition to challenging the Commonwealth's proof that the fires were incendiary in nature, the defendant sought to create a reasonable doubt by showing (i) that he was present with others at or about the time the fires started, and therefore could not have committed the arsons at the times alleged; and (ii) that the Commonwealth's evidence of motive was unsound. He sought to pursue this strategy by presenting affirmative proof, and by exposing infirmities in the Commonwealth's case on cross-examination. The record shows, however, that both prongs of this strategy were impaired by the lapse time.

A waiter at the restaurant, who was one of the last people to leave prior to the first fire, was not called as a witness because he remembered so little.[13] His testimony might have supported the defendant's contention that he was some distance away from the restaurant during the relevant time periods. A firefighter who investigated the first fire testified that a can containing turpentine had been found in the restaurant's kitchen. This testimony came as a surprise to the defense.[14] On cross-examination, this witness testified

in the trial record. These cases imply an independent duty on the appellate court to examine that record when the defendant argues that circumstances at trial demonstrate prejudice. See e.g. *Commonwealth* v. *Beckett, supra* at 335; *Commonwealth* v. *Look*, 379 Mass. at 903; *Commonwealth* v. *Fontaine*, 8 Mass. App. Ct. at 55.

[13] This witness was listed as a prosecution witness but apparently was not interviewed by Ms. Kottmyer until shortly before the trial. As a result of the interview, Ms. Kottmyer represented to the court and defense counsel at a bench conference that the witness "remembers so little . . . it is not worth my calling him." Since the witness' testimony could have helped the defense, his status as a potential Commonwealth witness does not mitigate the prejudice worked by his loss. See *Dufield* v. *Perrin*, 470 F. Supp. 687, 691-692 (D. N.H. 1979).

[14] The defense was not advised of the existence of this witness until the beginning of the week in which the trial started, about four years after the incident. Defense counsel was also told that the witness had made no statements or reports subject to discovery, a fact contradicted by his testimony at trial.

that he had "probably" mentioned turpentine in a report which he prepared on the day after the fire. The witness, however, was unable to locate his report or notes because the incident was "quite a while ago." A deputy fire chief testified to the defendant's statements with respect to insurance. On cross-examination, this witness was asked whether his trial testimony contradicted his testimony at the probable cause hearing. The witness answered that he could not recall since "that was five years ago." An insurance broker whose office had issued the binder in effect at the time of the second fire could not clarify important details surrounding the issuance of the binder because the agent who had dealt directly with the defendant had moved to Florida. This testimony would have helped in rebutting the Commonwealth's claim that the defendant had contrived to obtain insurance prior to the second fire.

The instances summarized above are illustrative only. There are further indications in the trial transcript that witnesses suffered failures of memory which tended to weaken the defense. Some of these lapses were cured by defense counsel's use of the transcript of the probable cause hearing. Others, however, were not. The Commonwealth argues that the lost testimony would only have corroborated other evidence presented by the defendant. It further suggests that any gaps in the testimony may have damaged the prosecution's case as much as the defense. In an appropriate case, these arguments would be persuasive. See *Commonwealth v. Beckett*, 373 Mass. at 335. Here, however, three considerations remain: the defendant was convicted; his conviction rests in part on memories which failed on issues important to his defense; and the effect of the loss of exculpatory evidence on a case can seldom be determined with precision. See *Barker v. Wingo, supra* at 532. We conclude that the defendant's right to present evidence on material issues was prejudicially impaired as a result of the delay.[15]

---

[15] Although we rely principally on the prejudice manifested in the trial transcript, there is also some indication that the delay caused the defend-

e. *The balance.* Apart from the question of prejudice, the defendant in this case might be entitled to the relief he sought below. See *Moore* v. *Arizona*, 414 U.S. 25 (1973); *Commonwealth* v. *Green*, 353 Mass. 687, 690 (1968); *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 530 (1975). The unrebutted evidence of prejudice eliminates any doubt in our minds that the charges must be dismissed. As was observed in *Commonwealth* v. *Beckett*, 373 Mass. at 335, institutional failures "will not [be] tolderate[d] . . . as an adequate ground for denying a reasonably prompt trial to a defendant who actively pursues his constitutional right to such a trial." We add only that the proper remedy lies in correcting the failures of the system, rather than in abridging a defendant's constitutional right.[16]

---

ant anxiety beyond the sort of pressure "present to some degree in virtually every case." *United States* v. *Shepherd,* 511 F.2d 119, 123 (5th Cir. 1975). It appears from the evidence at both hearings that the pending indictments had not resulted in a loss of employment, and that the defendant's present financial condition and that of his corporation had been poor before the fires. Nevertheless, there is evidence that the unjustified delay complicated final disposition of the defendant's insurance claims, that it likely contributed to the loss of the restaurant property and his home to foreclosure, and that it was a factor in his filing of personal (and corporate) bankruptcy. If the case had been tried within two years, as presently required by Mass.R.Crim.P. 36(b)(1), 378 Mass. 909 (1979), these pressures might have been alleviated.

[16] After the motions in this case were decided, some repair was accomplished by the adoption of Mass.R.Crim.P. 36, 378 Mass. 909 (1979), entitled "Case Management." Subdivision (b) of that rule establishes standards governing the speedy trial of all cases arising after the effective date of the rules. The rule sets out time tables for the trial of cases with exclusions for delays attributable to the orderly maintenance of criminal proceedings and actions taken or caused by the defendant. Special attention should be given to subsection (c) of the rule which provides as follows: "DISMISSAL FOR PREJUDICIAL DELAY. Notwithstanding the fact that a defendant is not entitled to a dismissal under subdivision (b) of this rule, a defendant shall upon motion be entitled to a dismissal where the judge after an examination and consideration of all attendant circumstances determines that (1) the conduct of the prosecuting attorney in bringing the defendant to trial has been unreasonably lacking in diligence and (2) this conduct on the part of the prosecuting attorney has resulted in prejudice to the defendant."

The judgments are reversed, and the verdicts set aside. The case is remanded to the Superior Court for the entry of an order dismissing all four indictments.

*So ordered.*