COMMONWEALTH vs. RONALD STOKES.

Suffolk.   September 18, 1984. — October 12, 1984.

Present: PERRETTA, CUTTER, & FINE, JJ.

*Practice, Criminal,* Speedy trial, Plea.  *Waiver.*

By pleading guilty a criminal defendant waived his claim that the Common-
    wealth's failure to bring him to trial within the time provided by
    Mass.R.Crim.P. 36 required dismissal of the indictment. [639-643]


INDICTMENT found and returned in the Superior Court De-
partment on July 8, 1981.

A motion for leave to withdraw a plea of guilty and for a
new trial was heard by *McGuire,* J.

*Jamie Ann Sabino* for the defendant.

*Judy G. Zeprun,* Assistant District Attorney, for the Com-
monwealth.

CUTTER, J. Stokes was indicted on July 8, 1981, for assault
and battery by means of a dangerous weapon on April 14,
1981, which took place at the close of a hearing before a judge
of the Municipal Court of the City of Boston. Three court
officers were removing Stokes from the courtroom when he
kicked one of them in the neck.[1]

Stokes decided to represent himself on the present indict-
ment. It rapidly became necessary, however, to have a succes-
sion of counsel appointed to represent him or, as stand-by
counsel, to advise him. Beginning on January 21, 1983, his
then stand-by counsel (appointed September 16, 1981) acted
for him in presenting to a judge of the Superior Court a motion
to dismiss the indictments for alleged failure to afford him a

---

[1] Indictments were also returned charging the defendant with similar at-
tacks on the two other officers, but those indictments were placed on file
with the defendant's consent.

speedy trial in accordance with Mass.R.Crim.P. 36, 378 Mass. 909 (1979), hereafter referred to merely as rule 36. At the hearing, conflicting contentions were made at length concerning various delays in placing Stokes on trial. The motion to dismiss was denied on January 24, 1983.

Thereupon Stokes, after discussion, pro se, of some minor motions, was examined by the trial judge with respect to a then proposed change of his plea to one of guilty. The trial judge conducted a careful inquiry of Stokes, obviously designed to assure the judge that the plea would be voluntary. The judge called upon the prosecutor to recite the facts of the offense. The prosecutor did so and the examination of Stokes continued, including the colloquy quoted in the margin.[2] Stokes's counsel stated that she had been afforded enough time to go over the matter with Stokes.

The judge accepted the plea of guilty and the prosecutor's recommendation of a sentence of a maximum of a year and a

---

[2] The inquiry of Stokes and his counsel included the following questions by the judge and answers by Stokes: "THE COURT: . . . Now, you heard the Assistant District Attorney recite some facts. Having heard those, his statement, do you want to plead guilty to this offense? A. Yes.

". . . .
"Q. . . . Like anybody else charged with a crime, you have *a right to a speedy trial before a jury or a judge sitting without a jury,* the right not to incriminate yourself, the right to confront or face your accusers, and the right to produce witnesses in your own behalf [emphasis supplied]. By pleading guilty on this indictment you give up those rights. Do you further understand that by pleading guilty you admit as true all facts essential or necessary to your conviction of this offense, and that in fact a plea of guilty is a confession to the crime with which you stand accused? A. Yes. Q. Are you pleading guilty freely, willingly[,] and voluntarily? A. Yes. Q. And do you feel that you've gone over the pros and cons of this, and that you're satisfied that you intend to offer a plea of guilty? A. Yes. "Q. Are you satisfied with your lawyer and what she's done for you? A. Very satisfied.

". . . .
"Q. Do you know of any reason why I should not accept your plea?
"A. No."

day in M.C.I., Walpole, and a minimum of one year, from and after sentences then being served or about to be served.[3]

Stokes, pro se, filed on February 28, 1983, a motion for a new trial. That motion was heard on December 28, 1983, and was denied on February 27, 1984, by the same judge who had accepted his plea of guilty.[4] Stokes has appealed from the conviction upon his plea of guilty and from the order denying a new trial.

Stokes contends that by his plea of guilty he did not forfeit either his right to appeal from the denial of his motion to dismiss under rule 36 or his opportunity to move for a new trial based upon that denial. Rule 36 was adopted to take effect on July 1, 1979. See 378 Mass. 842 (1979). It has been discussed in various decisions. See *Barry* v. *Commonwealth,* 390 Mass. 285 (1983); *Commonwealth* v. *Farris,* 390 Mass. 300 (1983); see also *Commonwealth* v. *Grant,* 391 Mass. 645, 646 n.1 (1984).[5]

In the *Barry* case, 390 Mass. at 295-296, the Supreme Judicial Court recognized that rule 36 is a court "'management tool'" which "creates a means through which defendants who desire a speedy trial can secure one." The court went on to say (at 296), "because the opportunity conferred by the rule *is not a fundamental constitutional right,* or even a right created by statute, the application of 'traditional indicia of waiver of

---

[3] These prior sentences were said by Stokes's counsel to have included one of from twelve to twenty-five years, after which, if parole should be granted, he would commence serving another earlier four to twelve year sentence. It was argued by the prosecutor that the new consecutive sentence was appropriate so that court officers and other custodians of prisoners, when carrying out their lawful duties, should "know that, if in fact something happens . . . their rights will be protected."

[4] The judge attached to his memorandum denying a new trial a memorandum (prepared by him but not filed, because of the guilty plea, with the clerk at the time of accepting Stokes's guilty plea) in which he contemporaneously stated his reasons for denying Stokes's motion to dismiss the indictments for alleged noncompliance with rule 36.

[5] Compare cases dealing with the situation prior to rule 36, such as those collected in the *Barry* case, at 295; *Commonwealth* v. *Conant,* 12 Mass. App. Ct. 287, 289-291 (1981); *Commonwealth* v. *Lutoff,* 14 Mass. App. Ct. 434 (1982).

rights' is appropriate" (emphasis supplied) with the consequence that "the public interest in the efficient operation of the criminal justice system will be served by the application of the prior case law." That "the opportunity conferred by the rule is not a fundamental constitutional right" was reiterated in *Commonwealth* v. *Farris,* 390 Mass. at 305, and is consistent with the flexible analysis of the "slippery" right of speedy trial under the Sixth Amendment by Mr. Justice Powell in *Barker* v. *Wingo,* 407 U.S. 514, 519-536, especially at 522 (1972). It is also consistent with the Reporters' Notes on rule 36 which appear in Mass. Ann. Laws, Rules of Criminal Procedure at 524 et seq. (1979).

The Reporters' Note upon subdivision (b)(1)[6] of rule 36 states, "A dismissal of charges on other grounds [than trial], *a disposition of the charges by plea,* or a filing of the case, of course, vitiates any need for trial, and in such an instance the rule *does not apply*" (emphasis supplied). The Reporters' Notes strongly indicate that, in various respects, rule 36 was intended to give to a criminal defendant an opportunity more favorable to his obtaining a speedy trial within specified time limits than is afforded either by the Sixth Amendment to the Constitution of the United States or by art. 11 of the Declaration of Rights of the Constitution of Massachusetts, e.g. in the shift (to the Commonwealth from the defendant) by rule 36 of the burden of justifying delays and modification, at least, of the requirement that the defendant establish prejudice from the delay.[7]

Under the pre-rule 36 practice, as was pointed out in *Commonwealth* v. *L'Italien,* 3 Mass. App. Ct. 763 (1975), "the

---

[6] Mass. Ann. Laws, *supra* at 526.

[7] See the compact summary of rule 36 in *Commonwealth* v. *Look,* 379 Mass. 893, 898 n.2, cert. denied, 449 U.S. 827 (1980). See also *Commonwealth* v. *Lutoff,* 14 Mass. App. Ct. 434, 446 n.16 (1982); rule 36(c), and the Reporters' Notes on that provision. It was recognized in *Barker* v. *Wingo,* 407 U.S. at 523, that it was open to States "more narrowly [to] define the right" to speedy trial than does the Sixth Amendment, but that case held that there was "no *constitutional* basis for holding that the speedy trial right can be quantified into a specified number of days or months" (emphasis supplied). *Ibid.*

overwhelming weight of authority holds that a valid plea of guilty constitutes a waiver of a defendant's claim that he was denied his right to a speedy trial." Although it is argued that the *L'Italien* case rested (at 763-764) on an alternative ground (rather than solely on waiver), the statement just quoted appears to be accurate.[8] Recent decisions (in addition to those mentioned in the *L'Italien* case) include *United States* v. *O'Donnell,* 539 F.2d 1233, 1235-1237 (9th Cir.), cert. denied, 429 U.S. 960 (1976); *United States* v. *Gaertner,* 583 F.2d 308, 310-312 (7th Cir. 1978); *United States* v. *Yunis,* 723 F.2d 795, 796 (11th Cir. 1984, holding that a voluntary plea of guilty "waives all *nonjurisdictional* defects in . . . court proceedings" [emphasis original] and that the right to a speedy trial is "nonjurisdictional"). See also *Tiemens* v. *United States,* 724 F.2d 928, 929 (11th Cir. 1984).

Stokes's brief places some reliance upon *Menna* v. *New York,* 423 U.S. 61 (1975), and an earlier case, *Blackledge* v. *Perry,* 417 U.S. 21 (1974). The *Menna* case held (at 62) that "[w]here . . . [a] State is precluded by the United States Constitution from haling a defendant into court [at all] on a charge, [F]ederal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." This is because (see n.2 of the *Menna* case, at 62-63) "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* [emphasis original] removes the issue of factual guilt from the case . . . . A guilty plea . . . renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is . . . established." In the *Menna* case it was decided that double jeopardy, if proved, prevented the State *constitutionally* from prosecuting the charge there considered. In *Haring* v. *Prosise,* 462 U.S. 306, 320 (1983), while holding that a plea of guilty does not bar an action

---

[8] Compare *Commonwealth* v. *Lutoff,* 14 Mass. App. Ct. at 442-447 (a pre-rule 36 case where prejudice to a defendant was found to exist which, even under rule 36(c), would warrant dismissal).

on at least certain claims under 42 U.S.C. § 1983 (1982), the Court said that a criminal "defendant who pleads guilty may seek to set aside a conviction based on prior *constitutional* claims which challenge 'the very power of the State to bring the defendant into court to answer the charge [barred by the Sixth Amendment] against him'" (emphasis supplied), quoting the *Blackledge* case, 417 U.S. at 30.

In the *Gaertner* case, 583 F.2d at 311, the Seventh Circuit, per curiam, recognized very plainly the sharp difference between a defendant's claim based upon double jeopardy (which prevents a further prosecution at all) and one based upon denial of a speedy trial. It held that "Gaertner's speedy trial claim, whether based upon the Sixth Amendment or the Due Process Clause of the Fifth Amendment, is not open for . . . review after pleas of guilty. The purpose of a prompt trial is to guarantee that the accused's right to a fair trial is not substantially prejudiced by pre-trial delay, or, put another way, to lend assurance that factual guilt is validly established. Speedy trial violations preclude the establishment of guilt by trial, but a finding of guilt by a proper plea remains a viable option. Simply, the establishment of guilt is not logically inconsistent with speedy trial violations, and does not prevent the government from invoking the criminal process, so long as there is no trial." The Supreme Judicial Court has similarly recognized the special nature of a claim under the double jeopardy clause (protected under the *Menna* case), viz. "that the State should not have tried the defendant at all." See *Commonwealth* v. *Clark,* 379 Mass. 623, 625-626 (1980).

We are aware that, because of the variations of rule 36 from comparable Federal provisions, e.g. 18 U.S.C. § 3161 (1982), and related statutory provisions, Federal cases "must be used with caution." See the *Barry* case, 390 Mass. at 290, n.9. We think, however, in the area under discussion, that rule 36 and the comparable Federal provisions lead to consistent results.

The judge's inquiry (see note 2, *supra*), before accepting Stokes's plea of guilty, amply informed Stokes that he was giving up his right to a speedy trial by pleading guilty. This plea

immediately followed the long proceeding dealing with Stokes's motion to dismiss for alleged noncompliance with rule 36. Stokes thus, when he changed his plea, should have had a thorough understanding of his contested rights under that rule.

Our conclusion makes it unnecessary to consider the merits of Stokes's disputed contention that there had been a violation of rule 36.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*